552 S.E.2d 26

**Eric GILL, Petitioner,**

v.

**STATE of South Carolina, Respondent.**

**No. 25344.**

Supreme Court of South Carolina.

Submitted Feb. 28, 2001.

Decided Aug. 20, 2001.

Senior Assistant Appellate Defender Wanda H. Haile, of South Carolina Office of Appellate Defense, of Columbia, for petitioner.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General G. Robert DeLoach, III and Assistant Attorney General David Spencer, all of Columbia, for respondent.

TOAL, Chief Justice:

Eric Gill ("Gill") appeals the circuit court judge's order denying post-conviction relief ("PCR"). We affirm.

### FACTUAL/PROCEDURAL BACKGROUND

On October 6, 1977, Isabelle Mills ("Mills") was cooking hamburgers at Bert's Grill along with several co-workers. At approximately 11:00 a.m., she heard a "bang" and saw Gill coming towards her with a gun. Gill fired the gun, killing Mills' co-worker, Bert Long ("Long"), with a gunshot wound to the head. Mills ran to the ladies room. Gill followed her and fired the gun inside the bathroom. He then entered the bathroom and fired the gun at Mills. As the two struggled over the gun, the gun fired. Mills was struck by bullets a total of three times. Kathie Faile ("Faile"), another employee of Bert's Grill who was present during the shooting, testified Gill also shot at her and one bullet hit her in the right shoulder and another hit her in the back. Despite being shot, Faile managed to get to a phone in an attempt to call for help. While Faile was making the call, Gill yanked the receiver from her hand and fled. Mills and Faile saw Gill and another man drive away from the scene.

In October 1979, Gill was found guilty of murder, grand larceny of a vehicle, armed robbery, and two counts of assault and battery with intent to kill ("ABIK"). During the penalty phase, the jury deadlocked on the question of aggravating circumstances and the judge declared a mistrial. Thereafter, the trial judge sentenced Gill to life imprisonment on the

murder conviction, eight years on the grand larceny conviction, twenty years on the armed robbery conviction, twenty years for ABIK, and eighteen years for the second conviction of ABIK.[1] Gill appealed his convictions and sentences, but later withdrew his appeal. This Court ordered the appeal dismissed on February 15, 1980.

On June 2, 1993, and July 17, 1995, Gill filed an application for PCR and an amended application for PCR, respectively. At the PCR hearing on June 3, 1997, Gill argued his appeal was involuntarily withdrawn because he was advised by counsel he could face the death penalty if he prevailed on direct appeal. On July 16, 1997, the PCR judge issued an order of dismissal denying Gill's application for PCR on the ground Gill did not sustain his burden of proving trial counsel rendered ineffective legal representation. Gill appealed the PCR judge's order and filed a petition for writ of certiorari. On March 9, 2000, this Court granted certiorari. The following issues are before this Court on certiorari:

I. Did Gill knowingly, intelligently, and voluntarily waive his right to direct appeal when counsel advised him that if he appealed and his convictions and sentences were overturned, he could receive the death penalty upon retrial?

II. Did the trial court err in denying Gill's request for a jury charge on diminished capacity?

III. Did the trial court err in denying Gill's motion for mistrial after the solicitor commented during closing argument on Gill's failure to present a defense?

## LAW/ANALYSIS

### I. Waiver of Right to Direct Appeal

Gill argues the PCR judge erred by denying his PCR application because his attorney mistakenly advised him he

---

1. This was Gill's second trial. At the first trial, Gill was found guilty of murder and sentenced to death. However, his conviction and sentence were reversed by this Court in *State v. Gill*, 273 S.C. 190, 255 S.E.2d 455 (1979), because the trial judge instructed the jurors they could begin consideration of the case prior to completion so long as they confined their consideration to the jury room. The trial judge also erred by failing to find as a matter of law, for sentencing purposes, Gill's prior conviction for statutory rape was not a conviction for a crime involving the use of violence against another person.

could face the death penalty if he prevailed on appeal and was retried. According to Gill, this advice caused him to involuntarily withdraw his appeal. We disagree.

## A. The PCR Proceeding

In a PCR proceeding, the burden of proof is on the applicant to prove the allegations in his application. *Brown v. State*, 340 S.C. 590, 533 S.E.2d 308 (2000); Rule 71.1(e), SCRCP. For an applicant to be granted PCR as a result of ineffective assistance of counsel, he must demonstrate: (1) his counsel failed to render reasonably effective assistance under prevailing professional norms; and (2) he was prejudiced by his counsel's ineffectiveness. *Id.* (citing *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). In order to prove prejudice, an applicant must demonstrate that but for counsel's errors, there is a reasonable probability the result of the trial would have been different. *Johnson v. State*, 325 S.C. 182, 480 S.E.2d 733 (1997). A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *Id.*

This Court must affirm the PCR court's decision when its findings are supported by any evidence of probative value. *Cherry v. State*, 300 S.C. 115, 386 S.E.2d 624 (1989). Likewise, a PCR judge's findings should not be upheld if there is no probative evidence to support them. *Holland v. State*, 322 S.C. 111, 470 S.E.2d 378 (1996).

At the June 3, 1997, PCR hearing, Gill argued he received ineffective assistance of counsel because his attorney advised him to withdraw his appeal. Specifically, Gill claims his attorney advised him the State could seek the death penalty if he was retried. The PCR judge found Gill's allegation "meritless." According to the PCR judge, Gill's testimony was not credible, and Gill did not demonstrate ineffective assistance of counsel or prejudice.

Defense counsel testified at the PCR hearing he could not recall discussing the appeals process with Gill and could not recall whether an appeal was filed, but he had a vague recollection co-counsel filed a notice of appeal "just to do it." While he did not recall specifically, defense counsel testified it was "highly likely" he informed Gill that if his conviction was

overturned on appeal, he may face the death penalty again. This advice was a correct statement of the law as discussed *infra.*

## B. The Clean Slate Rule

 This Court has never addressed whether a mistrial during the sentencing phase of a capital trial precludes the State from seeking the death penalty in the event of a new trial. As a general rule, a court cannot retry a defendant for an offense greater than and including the offense for which he was previously convicted. Conviction for a lesser included offense is an implied acquittal of any greater charges. Therefore, a prosecution on retrial for a greater offense than that for which the defendant was first convicted would constitute a violation of the Double Jeopardy Clause. *Price v. Georgia,* 398 U.S. 323, 90 S.Ct. 1757, 26 L.Ed.2d 300 (1970); *see also Bozeman v. State,* 307 S.C. 172, 414 S.E.2d 144 (1992) (finding trial counsel ineffective for falsely informing defendant he could be convicted of murder on retrial if he appealed and succeeded in vacating his manslaughter conviction). However, in certain circumstances, the sentence imposed at the first trial does not prevent the State from seeking a greater sentence upon retrial.

 For example, the general rule in capital punishment cases is that when a defendant's conviction is reversed on appeal, the original conviction is nullified and the slate is wiped clean.[2] If the defendant is convicted again on retrial, the death penalty may be validly imposed. This doctrine is known as the clean slate rule and was enunciated by the United States Supreme Court in *United States v. Ball,* 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300 (1896) and *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969).

In *Ball,* the United States Supreme Court held the constitutional guarantee against double jeopardy imposes no limitations upon the power to retry a defendant who has succeeded in getting his first conviction set aside. In *Pearce,* the question arose as to whether that same constitutional guarantee

---

2. *See* Anne Essaye, *Cruel and Unusual Punishment,* 75 GEO. L.J. 1168 (Feb.1987).

precluded the imposition of a harsher sentence after conviction upon retrial. The United States Supreme Court held, because the original conviction was nullified at the defendant's request, the slate was wiped clean and the sentencing court could impose any legally authorized sentence, whether or not it was greater than the sentence imposed following the first trial.

In *Bullington v. Missouri*, 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981), the United States Supreme Court recognized a limited exception to the clean slate rule—when a jury or appellate court finds the prosecution has failed to "prove its case" for the death penalty, and a life sentence is imposed, the clean slate rule does not apply, and the State cannot seek a harsher sentence upon retrial. In *Bullington*, the jury found the petitioner guilty of murder. The trial court then conducted a sentencing hearing before the same jury, and the parties presented additional evidence in aggravation or mitigation of the punishment. The jury returned a unanimous verdict of life imprisonment. When the petitioner was granted a new trial on appeal, the State notified him of its intention to seek the death penalty. The petitioner appealed to the United States Supreme Court, and they granted certiorari to review the Double Jeopardy issue.

The United States Supreme Court held that, where the first jury returns a unanimous verdict of life imprisonment, the Double Jeopardy Clause of the Fifth Amendment bars the imposition of the death penalty on retrial. The first jury, by choosing life, impliedly decides the prosecution has not proved its case for death, and impliedly acquits the defendant of the death penalty. According to the United States Supreme Court, the clean slate rule is inapplicable whenever a jury agrees or an appellate court decides the prosecution has not proved its case. *Id.* at 443–445, 101 S.Ct. at 1860–61; *see also Arizona v. Rumsey*, 467 U.S. 203, 104 S.Ct. 2305, 81 L.Ed.2d 164 (1984) (holding that once the trial judge rejected the death penalty and sentenced defendant to life, there could be no further attempt to have the death penalty imposed); *Pennsylvania v. Martorano*, 535 Pa. 178, 634 A.2d 1063 (1993). *But see Poland v. Arizona*, 476 U.S. 147, 106 S.Ct. 1749, 90 L.Ed.2d 123 (1986) (holding the Double Jeopardy Clause does not forbid a second capital sentencing hearing where either the sentencer or the reviewing court finds evidence sufficient

to justify imposition of the death penalty and, therefore, does not impliedly acquit the defendant on the merits).

In *Riddle v. State*, 314 S.C. 1, 443 S.E.2d 557 (1994), this Court found the Double Jeopardy Clause did not preclude the imposition of the death sentence on remand in a capital case. Relying on *Poland, supra*, the Court held that a defendant may not be retried if he obtains reversal of his first conviction on the ground the evidence was *insufficient* to convict. In *Riddle*, the petitioner appealed a third jury's recommendation that a sentence of death be imposed for his previous convictions of murder, armed robbery, and burglary. The petitioner asserted on appeal that this Court's prior decision precluded consideration of the death penalty because the concurring opinion stated that no evidence was submitted to the jury to support the aggravating circumstance. *Id.* at 4, 443 S.E.2d at 559. However, we found the relevant question in *Riddle* was whether the prior decision was based on the sufficiency of the evidence or a trial error in the admission of evidence. If the evidence was simply erroneously admitted, the Double Jeopardy Clause does not bar a retrial for sentencing. *Id.* at 5, 443 S.E.2d at 560. Because the error in *Riddle* was the admission of indictments and verdict forms from the first trial as proof of aggravating circumstances, the error was one of admission of evidence, rather than insufficiency of evidence. Therefore, we held the trial judge properly denied the defendant's motion to quash the notice of death penalty on Double Jeopardy grounds. *Id.*

The instant case does not involve a decision by the trial judge or jury that the prosecution had not proved its case because the jury was deadlocked during the penalty phase. Other jurisdictions have found the Double Jeopardy Clause does not bar the prosecution from seeking the death penalty on retrial for murder where a life sentence was imposed during the penalty phase following the first trial by operation of law due to jury deadlock. In *Martorano, supra*, the Pennsylvania Supreme Court found where a jury is deadlocked during the sentencing phase of a capital trial, there is no implied acquittal because the jury did not make a decision. Furthermore, the imposition of a life sentence by a trial judge does not operate as an implied acquittal because, under Pennsylvania's sentencing scheme, the judge has no discretion to

fashion a sentence once he finds the jury is deadlocked. *Martorano*, 634 A.2d at 1070; *see also Pennsylvania v. Satta-zahn*, 563 Pa. 533, 763 A.2d 359 (2000) (upholding the *Martorano* decision concerning jury deadlock and finding this decision did not have a chilling effect so as to constitute a *de facto* denial of defendant's right to appeal); *Kentucky v. Eldred*, 973 S.W.2d 43 (Ky.1998) (finding Double Jeopardy did not bar capital prosecution on retrial where a jury in the first trial found the presence of aggravating circumstances, but recommended life).

 Gill argues the *Bullington* exception applies in this case and, therefore, his trial counsel was ineffective because he advised Gill he could be sentenced to death upon retrial. First, *Bullington* was decided in 1981 and the order dismissing Gill's appeal is dated February 15, 1980. Therefore, Gill's trial counsel did not provide incorrect legal advice because the *Bullington* exception was not available at that time.[3] Second, the *Bullington* exception is not applicable because the jury was deadlocked in this case and was unable to decide whether the death penalty was appropriate. The life sentence in this case did not amount to an implied acquittal of the death penalty as was the case in *Bullington*. Here, the jury deadlocked on the existence of aggravating circumstances. The trial judge imposed a life sentence pursuant to S.C.Code Ann. § 16–3–20(C) (Supp.2000), which states, "If members of the jury after a reasonable deliberation cannot agree on a recommendation as to whether or not the death sentence should be imposed on a defendant found guilty of murder, the trial judge shall dismiss such jury and shall sentence the defendant to life imprisonment as provided in subsection (A)." In the event of a jury deadlock, the trial judge exercises no discretion and merely imposes the sentence mandated by section 16–3–20(C).

Therefore, the PCR judge's decision is affirmed because defense counsel adequately advised Gill of the consequences of appealing his life sentence, and Gill has not demonstrated either ineffective assistance of counsel or prejudice.

---

3. In 1980, the United States Supreme Court reaffirmed the principle the Double Jeopardy Clause does not prevent a more severe sentence at retrial. *United States v. DiFrancesco*, 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980). *Ball, supra,* and *Pearce, supra,* were also applicable at the time of Gill's appeal.

## II. Diminished Capacity

Gill argues on direct appeal the trial court erred by refusing to instruct the jury on the "diminished capacity doctrine." Even though Gill concedes South Carolina does not accept the diminished capacity doctrine, he argues it is applicable, and his conviction should be reversed because the State failed to prove malice. We disagree.

At trial, Dr. Harold Morgan, a forensic psychiatrist, testified Gill had a borderline intellectual capacity (I.Q. of 73), and he possessed an antisocial personality. As a result of these conditions, Dr. Morgan testified Gill could not formulate malice aforethought, an essential element of murder. According to Dr. Morgan, Gill had a personality disorder as a result of an absent mother and father, which resulted in Gill's inability to handle problems or think of the consequences of his behavior.

At the close of the trial, Gill's attorney asked the trial judge to charge diminished capacity, an accepted defense in several jurisdictions. The diminished capacity doctrine allows a defendant to offer evidence of his mental condition with respect to his capacity to achieve the *mens rea* required for the commission of the offense charged. 21 Am.Jur.2d *Criminal Law* § 38 (1998). In particular, the defense may be invoked to negate specific intent, where such intent is an element of the offense charged. *Id.* Diminished capacity differs from the insanity defense in that it may be raised by a defendant who has conceded to be legally sane. *Id.*

The trial judge did not err by refusing to charge diminished capacity because it is not recognized in South Carolina. Furthermore, according to this Court in *State v. Fuller*, 229 S.C. 439, 93 S.E.2d 463 (1956), a defendant is not entitled to an instruction concerning his capacity to form the requisite intent for malice aforethought when the instructions, taken as a whole, properly present elements of malice. Gill received proper jury charges on murder, voluntary manslaughter, ABIK, insanity, and self defense. These jury charges, taken as a whole, were sufficient because they adequately presented the elements of malice as recognized by South Carolina law.

### III. Solicitor's Comments During Closing Arguments

█ Gill argues the trial court erred by failing to grant a mistrial based on the solicitor's statement during closing arguments that Gill failed to present a defense. We disagree.

During closing argument, the solicitor made the following remarks:

Now as I sit in the courtroom and listened to testimony trying to anticipate somebody's defense, something he can hang his hat on. What is that defense in this case? I'll tell you my opinion. Of course, His Honor is in charge of the law, but in my opinion there is no defense in this case. They have failed. Mr. Fewster is a good attorney. Mr. Honeycutt is a good attorney, but they are shackled by the facts of the case. *They are limited as to what they can do in the case. What can they do to put up a defense in the case? There is no defense in this case.* October 6 th, 1977, Bert Long for no justifiable reason, for no justifiable cause, for nothing that he did, was murdered. Now you can call it killed, you can call it snuffed out, I'll tell you there is no way to get around it, it was cold blooded murder. There is no other way to describe it. These two attorneys can play legal gymnastics with words and try and turn this phrase around and this phrase around, but it's murder.

(emphasis added).

█ Gill argues the trial judge should have granted a mistrial because the solicitor referred to Gill's failure to present a defense, which violated his right to remain silent under the Fifth and Fourteenth Amendments. It is impermissible for the prosecution to comment directly or indirectly upon the defendant's failure to testify at trial. *Johnson v. State*, 325 S.C. 182, 480 S.E.2d 733 (1997). However, even improper comments on a defendant's failure to testify do not automatically require reversal if they are not prejudicial to the defendant. *Id.* The defendant bears the burden of demonstrating that improper comments on his refusal to testify deprived him of a fair trial. *Id.* Furthermore, even if the solicitor makes an improper comment on the defendant's failure to testify, a curative instruction emphasizing the jury cannot consider defendant's failure to testify against him will cure any potential error. *Id.*

 Gill's argument concerning the solicitor's remarks is without merit. First, the solicitor's remarks implied Gill did not have a defense, which most likely meant he did not have a defense of insanity or self defense. Second, any prejudice caused by the remarks was eliminated by the trial judge's curative instruction to the jury, which emphasized the defendant did not have to demonstrate his innocence, and his failure to testify could not be considered during their deliberations. Finally, any error caused by the solicitor's remarks was harmless considering the overwhelming evidence of Gill's guilt.

## CONCLUSION

Based on the foregoing, we **AFFIRM** the PCR court's decision, Gill's sentences, and Gill's convictions.

MOORE, WALLER, BURNETT and PLEICONES, JJ., concur.