Screening Report / Proposed Opinion

THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS
PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
The State, Respondent,
v.
Dale Bruce Jenkins, Appellant.
 
 
 

Appeal From Georgetown County
 Paula H. Thomas, Circuit Court Judge

Unpublished Opinion No. 2005-UP-607
Heard November 8, 2005  Filed December 6, 2005   

AFFIRMED

 
 
 
Assistant Appellate Defender Eleanor Duffy Cleary, of Columbia, for Appellant.
Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott,  Senior Assistant Attorney General Harold M. Coombs, Jr., Office of the Attorney General, all of Columbia, and Solicitor John Gregory Hembree, for Respondent.
 
 
 

PER CURIAM:  Dale Bruce Jenkins appeals following convictions for trafficking in cocaine and possession with intent to distribute cocaine within a half-mile of a school or park.  Specifically, he asserts the trial court erred in finding that his constitutional right not to testify was not violated by the solicitor during closing arguments.  We affirm.
FACTS
In the evening hours of January 9, 2002, armed with a search warrant for Jenkins home, police waited outside his place of employment.  When Jenkins exited the building, officers took him into custody as he approached his vehicle.  As Jenkins was being detained, he was advised of his Miranda[1] rights.
The officers placed Jenkins in their car and drove to his home to execute the search warrant.  When they arrived at the residence, the officers discovered three other people inside, including Jenkins mother, an older gentleman, and a small child.  While officers were searching the home, Glen Kufen, a Georgetown County Sheriffs officer, began speaking with Jenkins.  He told Jenkins that depending on where the narcotics [were] found in the house, everybody could go to jail or just him.  Kufen further informed him that if the drugs were found in his room, then only he would be held responsible.        
Shortly after Jenkins was so advised, he told officer Kufen that they would find powder cocaine behind the door in his room.  Kufen entered Jenkins room, moved a pile of clothes, and pulled the carpet back to expose a plastic container housing a brown paper bag.  Two plastic bags containing cocaine were found inside the brown paper bag.  A SLED chemical analyst testified that one plastic bag contained 16.94 grams of cocaine and the other contained 4.98 grams.[2]  
A Georgetown County Grand Jury subsequently indicted Jenkins for trafficking in cocaine and possession with the intent to distribute cocaine within a half-mile radius of a school or park.  Jenkins case proceeded to trial in his absence on August 5, 2003.[3]
At the start of trial, the court held a Jackson v. Denno[4] hearing to determine whether Jenkins voluntarily gave his statement concerning the drugs location.  Defense counsel argued the polices statements that Jenkins mother and friend could go to jail depending on where the drugs were found essentially coerced Jenkins into talking.  Counsel posited that because Jenkins did not want his mother to go to jail, he was forced to tell where the drugs were; thus, the statement was not freely and voluntarily given.  
Following introduction of various testimony on the issue, the trial court found by a preponderance of the evidence that before the statement was made, Jenkins was fully apprised of his right to remain silent.  The court further found that the officers statement concerning possible arrests was an accurate statement and, accordingly, there was no duress or threat to get Jenkins to talk.
Upon resolution of the Jackson v. Denno issue, the trial continued on the merits.  Following presentation of the States case in chief, the defense rested without putting forward any additional evidence.  As such, the trial proceeded to closing statements.  At one point during the States closing argument, in an effort to preempt a defense argument on the issue, the solicitor began to talk about whether Jenkins statement as to the drugs location was given voluntarily.  To this end, the solicitor made the following comments:

Now comes the issue about, Well, gee, he did force him or coerce him.  He told them unless he cooperated other people in the house would be arrested.  Well, the Judge is going to give you instructions in regard to possession that drugs can be possessed by more than one person, and what did the police officer tell him?  If the drugs are found in certain areas more than one person might be arrested.  Well if you walk into the living room and theres three adults there and theres drugs on the table, youre only going to arrest one person?
Think if you were to do that.  During the course of the trial all the Defendant would have to do is get on the stand and say, It wasnt mine.  It wasnt me.  The other two people arent arrested - - -

(Emphasis added).
The solicitors comments were cut off by defense counsels objection and the matter was heard in a bench conference.  At the conclusion of the conference, both parties were able to complete their closing arguments and the court charged the jury with the applicable law.  When the courts charge was complete, the jury retired and defense counsels motion for a mistrial was addressed.  
Specifically, defense counsel argued that the solicitors comments spoke to a persons ability to get on the stand and declare his or her innocence.  He further asserted that the comments were highly prejudicial and a violation of Jenkins Fifth Amendment right to remain silent.  This was especially true given the fact that Jenkins was not at trial and the solicitor pointed towards the witness stand when he made the comments.  
The court denied the mistrial because it found the comments were not directed at Jenkins failure to appear or failure to take the stand, but instead involved a hypothetical scenario.  The court further noted that its charge to the jury was clear that the attorneys arguments were not in themselves evidence to be considered.
LAW/ANALYSIS
On appeal, Jenkins argues the trial court erred in finding that appellants constitutional rights to not testify and to rely entirely upon the presumption of innocence were not violated by the solicitors comments.  
Whether a solicitors closing argument is proper is a matter left to the sound discretion of the trial court and an appellate court will not overturn a trial courts decision concerning closing arguments unless there has been an abuse of that discretion.  State v. King, 349 S.C. 142, 160, 561 S.E.2d 640, 649 (Ct. App. 2002) (citations omitted).
An accused has a constitutional right to remain silent, and exercise of that right may not be used against him.  See Doyle v. Ohio, 426 U.S. 610 (1976); State v. Shuler, 353 S.C. 176, 577 S.E.2d 438 (2003).  Specifically, the solicitor must not comment, whether directly or indirectly, on a defendants silence, failure to testify, or failure to present a defense.  McFadden v. State, 342 S.C. 637, 640, 539 S.E.2d 391, 393 (2000).
When an alleged violation of this constitutional right has taken place, also referred to as a Doyle violation, the court must apply the harmless error analysis articulated in State v. Pickens, 320 S.C. 528, 466 S.E.2d 364 (1996).  To be harmless under this analysis, the record should reflect that the reference to the defendants right to silence was a single reference, not repeated or alluded to; that the defendants silence was not connected directly to the defendants exculpatory story; the defendants story was completely implausible; and evidence of the defendants guilt was overwhelming.  Id. at 531, 466 S.E.2d at 366.
Even assuming the solicitor made improper comments concerning the defendants failure to testify, this alone does not automatically require reversal if the defendant is not prejudiced by the comments.  Gill v. State, 346 S.C. 209, 221, 552 S.E.2d 26, 33 (2001).  Furthermore, the defendant alleging the violation bears the burden of proving that the comments deprived him of a fair trial.  Id. 
In the current case, even if we decide that the statement could be seen as a comment on Jenkins failure to testify, we find it amounts to harmless error.  When closing arguments were complete, the trial court charged the jury: the fact that the Defendant did not testify is not a factor to be considered by you in any way in your deliberation and in your consideration of the question of the guilt or innocence of the Defendant.  We find this charge sufficient to cure any potential errors.  See Johnson v. State, 325 S.C. 182, 188, 480 S.E.2d 733, 735-36 (1997) (holding any potential errors in solicitors closing arguments were cured by trial courts instruction to jury that it could not consider defendants failure to testify).
AFFIRMED. 
STILWELL, J., KITTREDGE and WILLIAMS, JJ., concur.

[1] See Miranda v. Arizona, 384 U.S. 436 (1966).
[2] Other evidence and drug paraphernalia found in Jenkins room included a digital scale, a pager, a cell phone, small plastic sandwich baggies, razor blades, and a Crown Royal bag containing money.
[3] The record on appeal does not indicate why Jenkins was absent.
[4] 378 U.S. 368 (1964).