659.S.E.2d 256

The **STATE**, Respondent,

v.

**Gary Robert MOORE**, Appellant.

**No. 4357.**

Court of Appeals of South Carolina.

Submitted Jan. 1, 2008.

Decided March 13, 2008.

300

Appellate Defender Aileen P. Clare, of Columbia, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attor-

ney General Salley W. Elliott, and Senior Assistant Attorney General Harold M. Coombs, Jr., all of Columbia; and Solicitor John Gregory Hembree, of Conway, for Respondent.

PIEPER, J.

Appellant Gary Robert Moore (Moore) was convicted of felony driving under the influence and leaving the scene of an accident involving death. Moore asserts the trial court erred in refusing to suppress evidence removed from his brother's truck because the search exceeded the scope of consent. He also asserts the trial court erred in failing to declare a mistrial when the solicitor implied that Moore had an affirmative duty to modify his statement to police. We affirm.[1]

## STATEMENT OF FACTS

On the night of October 19, 2002, and into the early morning of October 20, 2002, a truck driving on Highway 17 in Horry County hit a pedestrian walking on the median and drove off. Police investigated this traffic fatality, received a witness report describing the vehicle involved, collected remaining parts of the car from the scene of the crime, and notified news media. Thereafter, an off duty officer reported a truck with a matching description and called in its tag number. Officers then used that tag number and went to the home of Moore and his brother. Both Moore and his brother were informed of the hit and run incident and were asked by the police to give consent to process the vehicle. Moore's brother notified the police that the he owned the truck but that Moore typically drove it. Both brothers consented verbally and in writing to allow processing of the truck by the South Carolina Highway Patrol. In an abundance of caution, a search warrant was obtained before taking parts off the vehicle. That warrant was challenged as defective at trial; however, the state indicated to the court that it was proceeding on its theory of consent and the efficacy of the search warrant was never addressed by the trial court. Moore concedes on appeal that the search warrant issue is not preserved for our review.[2]

---

1. We decide this case without oral argument pursuant to Rule 215, SCACR.

2. While we note the existence of a valid search warrant may satisfy our concerns about the evidence seized, we nonetheless feel compelled to

When processing was completed on the vehicle, parts were missing and the battery had been removed and placed in the bed of the truck. The truck was inoperable at that point and had to be towed for return. Because of these actions, Moore asserts the officers exceeded the scope of any consent given. Moore's motion to suppress the evidence was denied by the trial court.

At trial, Moore also asserted that the solicitor improperly commented on his constitutional right to remain silent by suggesting the defendant had a duty to contact the police to correct a mistake in his statement to the police. The trial court denied the motion and gave a cautionary instruction to the jury.

From these rulings, the defendant now appeals.

## STANDARD OF REVIEW

"In criminal cases, the appellate court sits to review errors of law only." *State v. Wilson*, 345 S.C. 1, 5, 545 S.E.2d 827, 829 (2001). The appellate court "is bound by the trial court's factual findings unless they are clearly erroneous." *State v. Quattlebaum*, 338 S.C. 441, 452, 527 S.E.2d 105, 111 (2000). The appellate court "does not re-evaluate the facts based on its own view of the preponderance of the evidence but simply determines whether the trial judge's ruling is supported by any evidence." *Wilson*, 345 S.C. at 6, 545 S.E.2d at 829.

## ANALYSIS

### I

**Did the trial court err by denying Moore's motion to suppress based on the allegation that investigating officers exceeded the scope of consent by removing parts of the truck and returning it in an inoperable condition?**

"The admission of evidence is within the discretion of the trial court and will not be reversed absent an abuse of discretion." *State v. Gaster*, 349 S.C. 545, 557, 564 S.E.2d 87,

---

address the arguments on appeal since the state requested the trial court to proceed only on the consent theory.

93 (2002) (citations omitted). "An abuse of discretion occurs when the trial court's ruling is based on an error of law." *State v. McDonald,* 343 S.C. 319, 325, 540 S.E.2d 464, 467 (2000) (quoting *Clark v. Cantrell,* 339 S.C. 369, 389, 529 S.E.2d 528, 539 (2000)). In an appeal from a motion to suppress evidence based on Fourth Amendment grounds, our review is limited to determining whether any evidence supports the circuit court's decision. *State v. Bowman,* 366 S.C. 485, 501, 623 S.E.2d 378, 386 (2005).

As to his consent argument, Moore primarily relies on *State v. Forrester,* 343 S.C. 637, 541 S.E.2d 837 (2001). *Forrester* stands for the proposition that under the South Carolina Constitution, "suspects are free to limit the scope of the searches to which they consent." *Id.* at 648, 541 S.E.2d at 843. "When relying on the consent of a suspect, a police officer's search must not exceed the scope of the consent granted or the search becomes unreasonable." *Id.* "The scope of the consent is measured by a test of 'objective' reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *State v. Mattison,* 352 S.C. 577, 585–86, 575 S.E.2d 852, 856 (Ct.App.2003) (citation omitted). Admittedly, a cursory review suggests a search which partially dismantled the truck and left it inoperable arguably exceeded the scope of consent given. *See State v. Garcia,* 127 N.M. 695, 698, 986 P.2d 491, 494 (N.M.App.1999), *cert. granted,* 128 N.M. 150, 990 P.2d 824 (N.M. Aug. 11, 1999) (No. 25,837) (although an individual consenting to a vehicle search should expect the search to be thorough, he need not anticipate the search to include the destruction of his vehicle).

However, the case at hand is distinguishable from the authority upon which Moore relies. While Moore might have had some interest in the truck being searched pursuant to his status as a permissive user, even if the search of his brother's truck exceeded the scope of Moore's consent, it did not *violate* Moore's privacy interests. South Carolina cases such as *Forrester,* which address the scope of consent given to investigating officers, pertain to the expansion of an existing search to incorporate a compartment or container not covered by the consent given. In the case at hand, the issue is not whether the investigating officers intruded into a protected, private or

hidden area, but rather, the issue is whether they exceeded the scope of consent by damaging or dismantling the truck they were searching. The damaging or dismantling of Moore's truck may give some right of recourse to Moore's brother, but affords no specific constitutional right to Moore himself based on the facts presented in this case.

Initially, we question whether Moore's constitutional rights were violated due to his lack of any reasonable expectation of privacy in the vehicle since consent to search was also given by his brother, the true owner of the vehicle in question. As previously mentioned, this case does not involve a violation of Moore's right to privacy. For Fourth Amendment purposes, "[a] 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property." *U.S. v. Jacobsen,* 466 U.S. 109, 113, 133, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984) (citing *U.S. v. Place,* 462 U.S. 696, 696, 103 S.Ct. 2637, 2638, 77 L.Ed.2d 110 (1983)). The only evidence presented was that Moore was a regular driver of the vehicle and thus, was a permissive user of the vehicle. Even if Moore were the only one to regularly drive the vehicle, since Moore's brother, the owner, also consented to the search and seizure of the vehicle, Moore cannot now claim that any alleged possessory interest in the vehicle was infringed or violated.

In the context of a passenger occupant, the United States Supreme Court in *Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387(1978), addressed whether evidence seized in an automobile in which defendants had been passengers should have been suppressed. The Court held that:

"Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted." A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed. And since the exclusionary rule is an attempt to effectuate the guarantees of the Fourth Amendment, it is proper to permit only defendants whose Fourth Amendment rights have been violated to benefit from the rule's protections. There is no reason to think that a party whose rights

have been infringed will not, if evidence is used against him, have ample motivation to move to suppress it. Even if such a person is not a defendant in the action, he may be able to recover damages for the violation of his Fourth Amendment rights, or seek redress under state law for invasion of privacy or trespass.

*Rakas*, 439 U.S. at 133–34, 99 S.Ct. at 425 (citations omitted). While there may be circumstances under which a non-owner driver can demonstrate the requisite expectation of privacy under Rakas to gain standing, no such circumstances have been presented in this case. Assuming, arguendo, that a person may have some expectation of privacy over that person's own vehicle parked in the backyard of his own residence, Moore's constitutional claim is nonetheless unavailing. While Moore has demonstrated he resided at the location, the record still does not suggest such a privacy interest in the vehicle itself to invoke further scrutiny by this court. He did not have sole custody of the vehicle nor was he stopped while he was using the vehicle. We see nothing more of record than his status as a permissive user. Any concern raised by virtue of the vehicle's location in the backyard, especially under the South Carolina Constitution, was rectified by the consent to take the vehicle from the backyard. Further, as the trial court indicated, the only evidence used against him was visually accessible on the outside of the vehicle. Thus, any reasonable expectation of privacy Moore may have had in the vehicle was not infringed. Additionally, Moore has failed to particularize any injury in fact that he has suffered as a result of the search. Accordingly, we find neither a violation of his Fourth Amendment rights nor a violation of Art. 1, Section 10 of the S.C. Constitution.

Furthermore, the investigating officers had probable cause to search the vehicle obviating the need for expanded consent or for analyzing the scope thereof. "Generally, a warrantless search is per se unreasonable and thus violative of the Fourth Amendment's prohibition against unreasonable searches and seizures." *State v. Bultron*, 318 S.C. 323, 331, 457 S.E.2d 616, 621 (Ct.App.1995) (citing *State v. Bailey*, 276 S.C. 32, 274 S.E.2d 913 (1981)). "However, a warrantless search will withstand constitutional scrutiny where the search falls within one of a few specifically established and well

delineated exceptions to the Fourth Amendment exclusionary rule." *Bultron,* 318 S.C. at 331–32, 457 S.E.2d at 621 (citing *State v. Brown,* 289 S.C. 581, 347 S.E.2d 882 (1986)). These exceptions include: (1) search incident to a lawful arrest; (2) "hot pursuit"; (3) stop and frisk; (4) automobile exception; (5) "plain view" doctrine; (6) consent; and (7) abandonment. *State v. Dupree,* 319 S.C. 454, 456–57, 462 S.E.2d 279, 281 (1995), *cert. denied,* 516 U.S. 1131, 116 S.Ct. 951, 133 L.Ed.2d 875 (1996).

"The burden of establishing probable cause as well as the existence of circumstances constituting an exception to the general prohibition against warrantless searches and seizures is upon the prosecution." *Bultron,* 318 S.C. at 332, 457 S.E.2d at 621. The record establishes the requisite probable cause in this case. Officer Harrelson testified that a witness who viewed the collision described the truck as "a camouflaged type colored vehicle, an older pickup truck and the clincher was that the license tag was mounted on the left side of the bumper which is something you don't see often." That description was then conveyed to news media, and a day or two later an off duty officer called in a license plate number of a vehicle matching that unique description. From that license plate information, Officer Harrelson was able to obtain an address for the suspect vehicle. Upon arriving at that address, Officer Harrelson saw the suspect vehicle in the driveway behind the residence. Through visual inspection of that vehicle, Officer Harrelson noticed that the license plate was off center, the truck was so rusty that at night it could appear camouflage in color, and that it had sustained damage to front end. Before giving the consent to take the vehicle, and after being given Miranda warnings, Moore voluntarily told the officer he had been driving on the night in question around the time of the incident. He further indicated that he thought he hit an animal or a bump or something and that there were no mechanical problems with the car. This combination of information is sufficient to establish that the officer had probable cause which, when combined with one of the exceptions to the warrant requirement, justifies a warrantless search of the vehicle.

As to those previously listed exceptions, we first look to the automobile exception. "The two bases for the exception are: (1) the ready mobility of automobiles and the potential that evidence may be lost before a warrant is obtained; and (2) the lessened expectation of privacy in motor vehicles which are subject to governmental regulation." *State v. Cox*, 290 S.C. 489, 491, 351 S.E.2d 570, 571 (1986) (citations omitted). In *Cox*, the court found that "under the automobile exception, probable cause alone is sufficient to justify a warrantless search." *Id.* at 492, 351 S.E.2d at 571–72 (citing *California v. Carney*, 471 U.S. 386, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985)).

Furthermore, in *State v. Weaver*, 374 S.C. 313, 320–21, 649 S.E.2d 479, 483 (2007), the supreme court noted that if there is probable cause to search a vehicle at the time it is seized, this rationale does not disappear merely because the vehicle is taken into police custody or immobilized. The court also indicated that it does not matter if a few days have passed before the search is conducted. While the majority in *Weaver* suggests it does not matter whether the vehicle was on private or public property and the dissent took exception thereto, we need not address any further the public / private dichotomy since the concerns of both the majority and the dissent are met by the consensual act of Moore and his brother allowing the police onto the property to take the vehicle. Therefore, under the automobile exception to the warrant requirement, the presence of probable cause validated the search and seizure of the vehicle despite the scope of consent given and impoundment of the vehicle by investigating officers.

We conclude, under the circumstances presented, the record herein does not support a violation of any reasonable expectation of privacy assertion by Moore to warrant suppression of the evidence and we also conclude that Moore failed to particularize any specific injury suffered. Moreover, even if the officers exceeded the scope of consent, their search of the vehicle was still lawful under the automobile exception to the warrant requirement and the evidence was appropriately admitted into Moore's trial.[3]

---

3. Appellate rules provide that we may affirm a decision upon any grounds appearing in the record. Rule 220(c), SCACR (2006). In that regard, we note that the plain view doctrine is also potentially applica-

## II

**Did the trial court err by failing to declare a mistrial when the solicitor allegedly suggested that Moore had an affirmative duty to modify his statement to police?**

Moore argues that during closing arguments the solicitor made an impermissible comment on the defendant's right to remain silent when he stated the following:

Remember this. Tim Novembrino, a friend of his, Tim Novembrino said, "After the police talked with him, he comes up and says immediately runs to the phone." He says,

"Tim, I was with you last night. Right?"

"No, you wasn't at my house."

"I spent the night with you on the 20th, the 19th going into the 20th. Right?"

"No."

"Well, I told the police that."

Tim Novembrino said, "You better go back and tell the police something different because that is not true."

People, you can consider that as evidence of a guilty mind.

The decision to grant or deny a mistrial is within the sound discretion of the trial court and will not be overturned on appeal absent an abuse of discretion amounting to an error of law. *State v. Stanley*, 365 S.C. 24, 33, 615 S.E.2d 455, 460 (Ct.App.2005); *State v. Rowlands*, 343 S.C. 454, 458, 539 S.E.2d 717, 719 (Ct.App.2000). Granting of a mistrial is a serious and extreme measure which should only be taken

ble and was addressed by the trial court. However, one of the elements of the doctrine recognized by the South Carolina Supreme Court case is inadvertent discovery. *State v. Culbreath*, 300 S.C. 232, 237, 387 S.E.2d 255, 257 (1990). Shortly after *Culbreath* was decided, the United States Supreme Court in *Horton v. California*, 496 U.S. 128, 130, 110 S.Ct. 2301, 2304, 110 L.Ed.2d 112 (1990), ruled that the plain view exception to the Fourth Amendment's warrant requirement applies even if the discovery of the evidence was not inadvertent, if the other requirements of the exception are satisfied. Due to our disposition and in light of the fact that the South Carolina Supreme Court has not yet indicated whether *Horton* will impact South Carolina jurisprudence, especially as it may apply to the South Carolina Constitution, we need not address this issue.

when the prejudice can be removed no other way. *Stanley*, 365 S.C. at 34, 615 S.E.2d at 460.

While the state may not directly or indirectly refer to or comment upon a defendant's exercise of a constitutional right, namely his right to remain silent, here the solicitor was commenting on what he characterized as Moore's attempt to create a false alibi. Furthermore, the solicitor simply restated the testimony that was already in the record without objection. "Improper comments on a defendant's failure to testify do not automatically require reversal if they are not prejudicial to the defendant." *Gill v. State*, 346 S.C. 209, 221, 552 S.E.2d 26, 33 (2001). "The defendant bears the burden of demonstrating that improper comments on his refusal to testify deprived him of a fair trial." *Id.* "Furthermore, even if the solicitor makes an improper comment on the defendant's failure to testify, a curative instruction emphasizing the jury cannot consider [the] defendant's failure to testify against him will cure any potential error." *Id.*

The trial judge first gave a cautionary instruction to the jury during trial that the testimony of the witness about instructing Moore to call the police was not to be held against the defendant and the judge further reminded the jury that the defendant had the constitutional right to remain silent. In the final charge, the judge again stated that Moore did not have the duty to report to or call the police. The judge also reiterated the defendant's right to remain silent and that the defendant's silence may not be considered against him. Even if the comment by the solicitor was inappropriate, which we do not so hold, having considered the entire record and the charge as a whole, the trial judge cured the alleged improper inference by the solicitor, if any. Accordingly, any alleged error did not prejudice Moore and was therefore harmless.

## CONCLUSION

For the aforementioned reasons the judgment of the trial court is hereby

**AFFIRMED.**

HUFF, J., and GOOLSBY, A.J., concur.