<u>**UNPUBLISHED**</u>

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 13-6407**

———————

EDMUND GOINS,

             Petitioner - Appellant,

      v.

WARDEN, PERRY CORRECTIONAL INSTITUTION,

             Respondent - Appellee.

———————

Appeal from the United States District Court for the District of
South Carolina, at Orangeburg.   J. Michelle Childs, District
Judge.  (5:12-cv-00267-JMC)

———————

Argued:  May 14, 2014                     Decided:  June 18, 2014

———————

Before GREGORY and THACKER, Circuit Judges, and DAVIS, Senior
Circuit Judge.

———————

Affirmed by unpublished per curiam opinion.

———————

**ARGUED**: Robert Dressel, UNIVERSITY OF VIRGINIA SCHOOL OF LAW,
Charlottesville, Virginia, for Appellant.  James Anthony Mabry,
OFFICE OF THE ATTORNEY GENERAL OF SOUTH CAROLINA, Columbia,
South Carolina, for Appellee.  **ON BRIEF**: Stephen L. Braga, Kevin
Cope, Ethan Simon, Third Year Law Student, Jacky Werman, Third
Year Law Student, Appellate Litigation Clinic, UNIVERSITY OF
VIRGINIA SCHOOL OF LAW, Charlottesville, Virginia, for
Appellant.  Alan Wilson, Attorney General, John W. McIntosh,
Deputy Attorney General, Donald J. Zelenka, Senior Assistant

Deputy Attorney General, OFFICE OF THE ATTORNEY GENERAL OF SOUTH CAROLINA, Columbia, South Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Appellant Edmund Goins ("Appellant"), an inmate in the custody of the state of South Carolina, petitions for a writ of habeas corpus in connection with his life sentence for assault and battery with intent to kill ("ABWIK"). He argues that his trial counsel was ineffective under Strickland v. Washington, 466 U.S. 668 (1984), for failing to present evidence of his mental health issues in order to negate the mens rea required for an ABWIK conviction.

On state habeas review, the South Carolina Court of Appeals rejected Appellant's ineffective assistance claim, reasoning that his counsel's failure to present the mental health evidence could not have prejudiced the outcome of his trial because South Carolina does not recognize a diminished capacity defense. See Goins v. State ("Goins I"), No. 2010-UP-339, 2010 WL 10080077, at *1 (S.C. Ct. App. June 29, 2010). The District Court for the District of South Carolina agreed. See Goins v. Warden, Perry Corr. Inst. ("Goins II"), No. 5:12-cv-00267-JMC, 2013 WL 652995 (D.S.C. February 21, 2013). We granted a Certificate of Appealability ("COA") "on the issue of whether [Appellant] received ineffective assistance of counsel based on his claim that his trial attorney failed to adequately investigate or present evidence regarding [his] mental health issues."

3

We conclude that Appellant's challenge is, at bottom, a challenge to a state court's interpretation and application of its own law, the federal ramifications of which have not been preserved for our review. Consequently, we affirm the judgment of the district court.

## I.

On May 30, 2000, Appellant was incarcerated in a maximum-security cell within the Cherokee County Detention Center in Cherokee County, South Carolina, where he was awaiting trial on several counts of breaking and entering. Appellant had spent the day engaging in a variety of disciplinary infractions, including flooding his toilet, dismantling a mop, and blocking the view into his cell. He was naked, as his uniform had been confiscated, save for a pair of underwear that he was wearing on his head, he says, to "keep [his] head warm." J.A. 176.[1] In response to Appellant's escalating infractions, two correctional officers, Officers Blackwell and Wisher, asked cellblock control to open his cell door. Once the door was opened, Appellant rushed out, wielding a pillow and a filed metal rod. In the ensuing melee, Appellant stabbed Officer Blackwell several

_____

[1] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

4

times.  Officer Wisher and a second inmate, Trustee Ellis, were stabbed when they attempted to intervene.

As a result of this incident, Appellant was indicted in the Cherokee County Court of General Sessions for three counts of ABWIK.  On July 23, 2001, a jury convicted Appellant on one count of ABWIK, for the attack on Officer Blackwell, and two counts of the lesser included offense of assault and battery of a high and aggravated nature ("ABHAN"), for the attacks on Officer Wisher and Trustee Ellis.  Based on his criminal history, which included a prior ABWIK conviction, the state court sentenced Appellant to a mandatory term of life imprisonment without parole on the ABWIK count, see S.C. Code Ann. § 17-25-45, and to two consecutive terms of ten years imprisonment on the ABHAN counts.  Appellant's direct appeal, in which he filed a pro se brief asserting ineffective assistance of counsel, was unsuccessful.

On March 9, 2004, Appellant filed an application for post-conviction relief ("PCR") in state court.  In that application, he argued that his trial counsel was ineffective for failing to investigate or present at trial evidence concerning his history of mental health problems.  On September 22, 2005, the PCR court conducted an evidentiary hearing on Appellant's claims.  Both Appellant and his trial counsel testified, and Appellant submitted various medical records

5

related to his stays at area hospitals (the "mental health evidence"). Appellant did not present any expert testimony in support of his claims.

On July 3, 2006, the PCR court entered an order granting Appellant habeas relief on all three counts of conviction. The PCR court found, inter alia, that Appellant had a documented history of diagnoses for mood disorder, bipolar disorder, polysubstance related disorder, and antisocial personality disorder. In the PCR court's view,

> [I]f a jury had been exposed to evidence of the Applicant's prior episode of decomposition where he stripped off his clothes and engaged in aberrant behavior,[2] there is a reasonable probability sufficient to undermine confidence in the outcome of this trial, that the jury would have interpreted the Applicant's conduct on May 30, 2000, as impulsive and dangerous, but insufficient to support a finding of [the mens rea required for ABWIK]. . . . [and] returned three convictions on ABHAN, as opposed to two convictions on ABHAN and one for AB[W]IK.

---

[2] Appellant's medical records contain reference to an incident that occurred in 1997, when Appellant was first diagnosed with bipolar disorder. See J.A. 384-86. Specifically, on October 3, 1997, Appellant took off all of his clothes and climbed a water tower because he believed he was speaking with God. See id. at 316-17, 384. Immediately following this incident, Appellant was involuntarily committed to the Dorothea Dix Hospital in Raleigh, North Carolina. He was released on October 9, 1997, over two and a half years before he engaged in the conduct giving rise to the ABWIK conviction at issue in the instant case.

6

J.A. 495 (internal citations omitted).

On July 30, 2007, the state of South Carolina filed a petition for a writ of certiorari to the South Carolina Supreme Court. That court transferred the appeal to the South Carolina Court of Appeals, which granted the petition for the writ of certiorari on March 11, 2009. The South Carolina Court of Appeals reversed the PCR Court's grant of post-conviction relief and reinstated the three convictions on June 29, 2010.

In its opinion, the South Carolina Court of Appeals acknowledged the mental health evidence, but emphasized that Appellant had not "put forth any evidence that he was either insane at the time of the assaults or incompetent at the time of trial." Goins I, No. 2010-UP-339, 2010 WL 10080077, at *1 (S.C. App. June 29, 2010). It went on to characterize the PCR court's prejudice analysis as "tantamount to a recognition of the defense of diminished capacity,[3] which we do not recognize in

---

[3] The South Carolina Supreme Court has described the diminished capacity defense as follows:

> The diminished capacity doctrine allows a defendant to offer evidence of his mental condition with respect to his capacity to achieve the mens rea required for the commission of the offense charged. In particular, the defense may be invoked to negate specific intent, where such intent is an element of the offense charged. Diminished capacity differs from the insanity defense in that it may be raised by

(Continued)

7

this state." Id. at *1 (citations omitted). Consequently, the South Carolina Court of Appeals concluded, Appellant had failed to demonstrate that his trial counsel's failure to introduce this evidence "undermine[d] confidence in the outcome of the trial." Id. (citing Porter v. McCollum, 558 U.S. 30, 42-44 (2009) (per curiam)).

Appellant unsuccessfully sought discretionary review of the South Carolina Court of Appeals' decision in the South Carolina Supreme Court. Thereafter, on January 26, 2012, Appellant filed a federal habeas petition pursuant to 28 U.S.C § 2254 in the United States District Court for the District of South Carolina. In his petition, he again argued that he was denied effective assistance of counsel when his trial counsel failed to investigate his mental health disorders and present the mental health evidence. On February 21, 2013, the district court dismissed the petition and denied a COA. See Goins II, No. 5:12-cv-00267-JMC, 2013 WL 652995, at *4 (D.S.C. February 21, 2013). Appellant timely filed a notice of appeal on March 18, 2013, and we granted a COA "on the issue of whether

_____

a defendant who has conceded to be legally sane.

Gill v. State, 552 S.E.2d 26, 32 (S.C. 2001) (internal citations omitted).

8

[Appellant] received ineffective assistance of counsel based on his claim that his trial attorney failed to adequately investigate or present evidence regarding [his] mental health issues."

## II.

Although we review de novo a district court's decision on a petition for a writ of habeas corpus that is based on the state court record, see Barnes v. Joyner, --- F.3d ----, 2014 WL 1759085, at *6 (4th Cir. May 5, 2014), we review the underlying state court judgment pursuant to the deferential standards set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").

The relevant statute permits a federal court to grant relief to a state petitioner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a); see also Wilson v. Corcoran, 131 S. Ct. 13, 16 (2010) (per curiam) ("'[F]ederal habeas corpus relief does not lie for errors of state law.'" (quoting Estelle v. McGuire, 502 U.S. 62, 67 (1991))).  When a claim has been adjudicated on the merits in a state court proceeding, habeas relief is permissible under AEDPA only if the state court's determination:

> (1) resulted in a decision that was contrary
> to, or involved an unreasonable application
> of, clearly established Federal law, as

9

> determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). We must also presume the correctness of the state court's factual findings unless rebutted by clear and convincing evidence, see id. § 2254(e)(1), and we are bound by "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction," Bradshaw v. Richey, 546 U.S. 74, 76 (2005) (per curiam) (citations omitted).

As the Supreme Court of the United States has repeatedly emphasized, AEDPA imposes a "highly deferential standard for evaluating state-court rulings" that "demands that state-court decisions be given the benefit of the doubt." Woodford v. Visciotti, 537 U.S. 19, 24 (2002) (per curiam) (internal quotation marks omitted). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable —-a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007). Accordingly, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v.

10

Richter, 131 S. Ct. 770, 786 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). A state prisoner, in other words, "'must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement'" in order to obtain habeas relief from a federal court. White v. Woodall, 134 S. Ct. 1697, 1702 (2014) (quoting Harrington, 562 U.S. at 786-87).

To establish ineffective assistance under Strickland v. Washington, 466 U.S. 668 (1984), a state habeas petitioner must demonstrate not only that (1) his counsel's performance was deficient and (2) he suffered prejudice as a result, but also that "the state court's rejection of [the] claim of ineffective assistance of counsel was 'contrary to, or involved an unreasonable application of' Strickland, or it rested 'on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" Porter v. McCollum, 558 U.S. 30, 39 (2009) (per curiam) (quoting 28 U.S.C. § 2254(d)). Notably, we need not address whether "counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Strickland, 466 U.S. at 697. If we determine that the state court "reasonably could have concluded that

11

[Appellant] was not prejudiced by counsel's actions," then we need proceed no further with Appellant's claim. Premo v. Moore, 131 S. Ct. 733, 745 (2011).

Under Strickland's prejudice prong, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694. As defined by the Supreme Court, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent [counsel's] errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 695. "The likelihood of a different result must be substantial, not just conceivable." Harrington, 131 S. Ct. at 792. In determining whether there is a reasonable probability of a different result, we "consider all the relevant evidence that the jury would have had before it if [counsel] had pursued [a] different path." Wong v. Belmontes, 558 U.S. 15, 19 (2009) (per curiam) (emphasis omitted). This includes evidence that was adduced at trial as well as that which was not presented until post-conviction review. See Porter, 558 U.S. at 41; see also Strickland, 466 U.S. at 696.

12

III.

In this appeal, Appellant argues that his trial counsel's failure to introduce evidence of his mental health issues to negate the mens rea required for his ABWIK conviction amounted to ineffective assistance under Strickland. We conclude that the South Carolina Court of Appeals neither unreasonably applied clearly established federal law nor made an unreasonable determination of the facts in dismissing this claim for lack of merit. See 28 U.S.C. § 2254(d).

A.

We turn first to Appellant's argument that the South Carolina Court of Appeals "unreasonably applied the law to conclude that the [mental health evidence] constituted a prohibited 'diminished capacity' defense under state law." Appellant's Br. 25. In order to prevail on this theory, Appellant must demonstrate that the South Carolina Court of Appeals' adjudication of his claim "resulted in a decision that . . . involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A state court decision is an "unreasonable application of" clearly established federal law when the state court "identifies the correct governing legal rule from [the Supreme] Court's cases but

13

unreasonably applies it to the facts of the particular state prisoner's case." Williams v. Taylor, 529 U.S. 362, 407 (2000).

Here, the South Carolina Court of Appeals correctly identified Strickland and its progeny as the "clearly established Federal law" governing Appellant's ineffective assistance claim. See Goins I, No. 2010–UP–339, 2010 WL 10080077, at *1 (S.C. App. June 29, 2010) (citing Strickland v. Washington, 466 U.S. 668, 697 (1984))). It went on to rely on two state court decisions, Gill v. State, 552 S.E.2d 26 (S.C. 2001),[4] and State v. Santiago, 634 S.E.2d 23 (S.C. Ct. App. 2006),[5] to conclude that the PCR court's finding of prejudice

---

[4] Gill is the seminal case in South Carolina on diminished capacity. In that case, the trial court permitted the defendant to call an expert witness, who testified that the defendant had borderline mental capacity and an antisocial personality. Gill, 522 S.E.2d at 32. The expert opined that, as a result of these conditions, the defendant "could not formulate malice aforethought, an essential element of murder." Id. The defendant asked for a diminished capacity instruction at the close of trial, and the judge refused. See id. The South Carolina Supreme Court affirmed, holding, "[t]he trial judge did not err by refusing to charge diminished capacity because it is not recognized in South Carolina." Id.

[5] In Santiago, the trial court refused a defendant's request to have an expert witness testify during trial "that because of [the defendant's] Asperger's disorder he did not have the requisite mental state to commit murder nor the ability to provide a voluntary confession." 634 S.E.2d at 161-62. The South Carolina Court of Appeals affirmed, observing, "[e]ssentially, defense counsel argued that [the defendant] was culpable of a lesser offense because of his diminished capacity. However, the diminished capacity defense is not recognized in South Carolina." Id. at 162.

14

under Strickland was "tantamount to a recognition of the defense of diminished capacity, which we do not recognize in this state." Goins I, 2010 WL 10080077, at *1. Having found that the evidence presented to the PCR court was thus inadmissible for Appellant's intended purpose as a matter of state evidentiary law, the South Carolina Court of Appeals determined Appellant could not have been prejudiced within the meaning of Strickland by its absence. See id.

Appellant contends the South Carolina Court of Appeals' decision erroneously "conflated the affirmative defense of diminished capacity with more traditional defensive efforts to introduce evidence to undermine the prosecution's burden" of proving intent. Appellant's Br. 27. He points to a plethora of cases from state courts, district courts, and other circuit courts of appeals in support of his theory that South Carolina has apparently settled on an "incorrect definition of diminished capacity." Id. at 33. What other courts may think of South Carolina law, however, is of no moment -- "[i]t is beyond the mandate of federal habeas courts [] to correct the interpretation by state courts of a state's own laws." Richardson v. Branker, 668 F.3d 128, 141 (4th Cir. 2012) (alteration in original) (internal quotation marks omitted); see also Wilson v. Corcoran, 131 S. Ct. 13, 16 (2010) (per curiam) ("'[F]ederal habeas corpus relief does not lie for errors of

15

state law'" (quoting Estelle v. McGuire, 502 U.S. 62, 67 (1991))).[6] Consequently, in analyzing Appellant's ineffective assistance claim, we are bound by the South Carolina Court of Appeals' interpretation of South Carolina's evidentiary rules. See Bradshaw v. Richey, 546 U.S. 74, 76 (2005) (per curiam) ("[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.").

In light of the foregoing principles, we will not disturb the South Carolina Court of Appeals' conclusion that Appellant was not prejudiced within the meaning of Strickland when his trial counsel failed to make an attempt to introduce inadmissible evidence. As the Fifth Circuit recently observed, "the failure to make a meritless attempt at introducing evidence could not have prejudiced [the petitioner] because the evidence ultimately would not have been introduced." Garza v. Stephens, 738 F.3d 669, 677 (5th Cir. 2013); see also Hoots v. Allsbrook,

---

[6] We must reject Appellant's attempt to give a constitutional dimension to this argument through invocation of the Due Process Clause. Although we do not doubt a habeas petitioner's ability to challenge a state evidentiary scheme as violative of his due process rights, see, e.g., Clark v. Arizona, 548 U.S. 735 (2006), any such challenge falls well outside of the COA in this case, see United States v. Nicholson, 475 F.3d 241, 244 (4th Cir. 2007) (observing that a petitioner's "appeal is limited" to the specific issue or issues identified in the COA); see also 28 U.S.C. § 2253(c).

785 F.2d 1214, 1222 (4th Cir. 1985) (holding that trial counsel's "decision not to attempt to introduce inadmissible evidence . . . did not constitute ineffective assistance of counsel"). Indeed, even taking Appellant's arguments at face value, his failure to make a specific proffer to the PCR court as to what an expert witness would have testified regarding the mental health evidence, had trial counsel properly investigated and sought to present such testimony, reduces any claim of prejudice to mere speculation and is fatal to his claim. See Beaver v. Thompson, 93 F.3d 1186, 1195 (4th Cir. 1996) ("[A]n allegation of inadequate investigation does not warrant habeas relief absent a proffer of what favorable evidence or testimony would have been produced."); Bassette v. Thompson, 915 F.2d 932, 940-41 (4th Cir. 1990) (appellant's failure to "advise us of what an adequate investigation would have revealed or what these witnesses might have said, if they had been called to testify" was fatal to his ineffective assistance of counsel claim).

Consequently, we hold that the South Carolina Court of Appeals' decision rejecting Appellant's ineffective assistance claim was not an unreasonable application of clearly established federal law.

B.

We need only briefly consider Appellant's second and final argument, i.e., that the South Carolina Court of Appeals

17

"unreasonabl[y] appli[ed] . . . the historical facts" when it "assum[ed] that [Appellant] would not have been allowed to introduce his mental health-related evidence to negate mens rea." Appellant's Br. 37. Although Appellant appears to present this theory in terms of a factual challenge under 28 U.S.C. § 2254(d)(2), it is little more than a reimagining of his first argument under 28 U.S.C. § 2254(d)(1). In any event, inasmuch as Appellant has wholly failed to demonstrate that any of the South Carolina Court of Appeals' "factual determination[s]" as to the admissibility of the mental health evidence were "objectively unreasonable in light of the record before the court," Merzbacher v. Shearin, 706 F.3d 356, 364 (4th Cir. 2013) (internal quotation marks omitted), we readily conclude he is not entitled to habeas relief under 28 U.S.C. § 2254(d)(2).

IV.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.

18