# United States Court of Appeals
## For the First Circuit

No. 05-1582

UNITED STATES OF AMERICA,

Appellee,

v.

JUAN SEGARRA-RIVERA,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Salvador E. Casellas, U.S. District Judge]

Before

Selya, Circuit Judge,
Stahl, Senior Circuit Judge,
and Howard, Circuit Judge.

Ignacio Fernández de Lahongrais, by appointment of the court, for appellant.
Nelson Pérez-Sosa, Assistant United States Attorney (Chief, Appellate Division), with whom Rosa Emilia Rodríguez-Vélez, United States Attorney, was on brief, for appellee.

January 11, 2007

**SELYA**, **Circuit Judge**.  Defendant-appellant Juan Segarra-Rivera (Segarra) asks that we remand for an evidentiary hearing on his asserted right to withdraw his guilty plea.  Segarra premises this entreaty on the ground that he was entitled, under the Sixth Amendment, to be represented at his plea-withdrawal hearing by conflict-free counsel.  For all practical purposes, that rule is ironclad; the question here is whether the district court, when faced with a colorable claim of an actual conflict of interest, should have invoked that rule.  Concluding, as we do, that the court acted in derogation of Segarra's Sixth Amendment rights by proceeding as it did, we remand for further factfinding consistent with this opinion.

We rehearse here only those facts necessary to place this appeal into perspective.  On August 28, 2003, a federal grand jury, in a superseding indictment, charged Segarra with conspiracy to distribute multi-kilograms of controlled substances.  See 21 U.S.C. §§ 841(a)(1), 846.  The thrust of that count was that Segarra managed and supervised a booming business in the sale of drugs at a housing project in Juncos, Puerto Rico.  The superseding indictment also contained a second (derivative) count seeking criminal forfeiture.

After some preliminary skirmishing, not relevant here, Segarra pleaded guilty to both counts of the indictment pursuant to a written plea agreement (the Agreement).  See Fed. R. Crim. P.

11(c)(1)(A)-(B).  The instant appeal concerns the circumstances surrounding Segarra's decision to plead guilty and his subsequent endeavors to withdraw his guilty plea.

During the relevant time frame, Attorney Rafael Anglada-López (Anglada) represented Segarra by appointment of the district court.[1]  On August 17, 2004, Anglada visited Segarra in prison and secured his signature on the Agreement.  A change-of-plea hearing, held the next day, proceeded without incident.  In pertinent part, Segarra, through an interpreter, confirmed that he understood both the nature of the charges and the consequences of confessing guilt to them.  He stated that he had entered into the Agreement of his own accord and without pressure from anyone; that he had discussed the terms of the Agreement with his attorney before signing it; and that he was satisfied with Anglada's representation.

On December 8, 2004, Segarra initiated a series of pro se motions aimed at vitiating his plea.  He claimed that he had not been fully informed of the consequences of pleading guilty and that his entry into the Agreement was neither knowing nor voluntary; to the contrary, he signed the Agreement and responded on cue during

---

[1]Anglada was Segarra's second court-appointed lawyer.  He was appointed on June 15, 2004, after Segarra's original attorney, Francisco M. Dolz-Sánchez, was permitted to withdraw.  In connection with that switch, Segarra had alleged that Dolz-Sánchez "wants me to sign an agreement, which in my opinion is unfair, because I haven't seen the evidence."

the change-of-plea colloquy only because Anglada had coerced and manipulated him.

With respect to this last-mentioned claim, Segarra offered a number of particulars. He asserted, for example, that Anglada took advantage of his lack of education, his inability to speak English, and his debilitated physical and mental condition. He also asserted that, during Anglada's prison visit, the lawyer had insisted that he would not leave empty-handed but "had to come away with the [A]greement signed." In order to ensure Segarra's acquiescence, Anglada ambushed him with a surprise visit from his wife, Yolanda Vega, whom Segarra had not seen in three months. Vega, convalescing in a wheelchair, allegedly implored Segarra through a veil of tears to follow Anglada's lead. Segarra further noted that Anglada had not performed the rudimentary preparatory work needed to try the case and, thus, was adamantly unreceptive to Segarra's insistence on a jury trial. Finally, Segarra charged that Anglada had concealed exculpatory evidence from the court. As a result of these foibles, Segarra stated, he signed the Agreement and went through the change-of-plea colloquy in a state of confusion.

In response to Segarra's allegations, Anglada filed a motion requesting an evidentiary hearing on the plea-withdrawal request. In that motion, Anglada admitted that, after entering the

plea, Segarra repeatedly beseeched him (Anglada) to move to set it aside.  Anglada had not, however, heeded his client's wishes.

The district court considered Segarra's serial motions on January 28, 2005 (without convening an evidentiary hearing).  At that time, Segarra submitted a signed statement that a fellow inmate had helped him draft.  That statement reiterated much of what he had disclosed in his pro se motions, including his claims that Anglada had concealed exculpatory evidence and manipulated him into signing the Agreement.  In its peroration, Segarra's statement declared:

> I have never accepted the agreement that counsel Anglada[] made me sign.  Counsel Anglada[] never brought me the evidence in the case and I always insisted to counsel Anglada[] on my desire to go to trial.  Counsel Anglada[] merely limited himself to put "undue pressure" so that I would sign, so much so that he brought my wife, Yolanda Vega, in the conditions that I have already reported . . . .

Segarra also requested that the district court appoint new counsel to represent him at the plea-withdrawal hearing and thereafter throughout the case.

Faced with this statement and request, the district court solicited comments from both the prosecutor and Anglada.  The prosecutor argued that the attempted plea withdrawal constituted no more than second-guessing sparked by what seemed likely to be a stiff sentence.  For his part, Anglada insisted that he had explained the Agreement fully to Segarra in Spanish and that

-5-

Segarra had understood him. He maintained that his sole contact with Vega had been the receipt of desperate telephone calls from her. He also suggested that video cameras at the prison would bear out the absurdity of the charge of coercion. While he conceded that he had been unresponsive to Segarra's persistent instructions that he seek to vitiate the plea, he explained that he had hoped to persuade his client not to pursue such a course.

Anglada proceeded to disparage Segarra's stated basis for retraction of the plea, indicating to the court that Segarra had understood the nature and consequences of his actions. He even pointed out that Segarra, in his pro se motions, had failed to assert his innocence. He then stated cryptically that he wished he could call Vega and Segarra's brothers as witnesses because they would "know whether [Segarra] is guilty or not."

In a written rescript, the district court denied Segarra's motions to withdraw his guilty plea and for new counsel. See United States v. Segarra-Rivera, Crim. No. 03-188 (D.P.R. Mar. 4, 2005) (unpublished). Following the imposition of a 135-month incarcerative sentence, Segarra — represented by new counsel — prosecuted this timely appeal.

The lower court's rescript focused on whether Segarra should be allowed to withdraw his guilty plea. In our view, this focus puts the cart before the horse. There is a logically antecedent question: was Segarra entitled to representation by

counsel other than Anglada at the plea-withdrawal hearing?  If he was, then his request for the appointment of new counsel should have been honored — and the failure to honor it would cast doubt upon the validity of the record on which the district court ruled. Consequently, we start with this antecedent question.

The Sixth Amendment guarantees that, in all felony cases, an accused has a right to the assistance of counsel. U.S. Const. amend. VI.  Unless knowingly and intelligently waived, this right attaches at every critical stage of the criminal process.  Iowa v. Tovar, 541 U.S. 77, 80-81 (2004).  The entry of a guilty plea is one such critical stage, see id. at 81, and a plea-withdrawal hearing is another, see United States v. Sanchez-Barreto, 93 F.3d 17, 20 (1st Cir. 1996).

Here, Segarra's Sixth Amendment challenge, as presented to the district court, had two related but conceptually distinct aspects.  One aspect rested upon an argument that counsel performed ineffectively or incompetently.  See, e.g., Strickland v. Washington, 466 U.S. 668, 687-88 (1984).  That aspect is not pursued on this appeal and, in all events, is not properly before us.  Claims of ineffective assistance of counsel simpliciter, including claims of substandard performance, are routinely adjudicated in collateral post-conviction proceedings. See United States v. Torres-Rosario, 447 F.3d 61, 64 (1st Cir. 2006); see also 28 U.S.C. § 2255.  While there are exceptions to this praxis, see,

-7-

e.g., United States v. Theodore, 354 F.3d 1, 3 (1st Cir. 2003); United States v. Natanel, 938 F.2d 302, 309 (1st Cir. 1991), Segarra makes no developed argument supporting the applicability of any such exception here.

The remaining aspect of Segarra's Sixth Amendment challenge is of a different genre. In mounting this attack, Segarra does not rely upon allegations of attorney ineffectiveness or incompetence per se; rather, he maintains that Anglada concealed exculpatory evidence and manipulated him into signing the Agreement in order to avoid a trial for which he (the lawyer) had neglected to prepare. If Segarra's allegations are true — a matter on which we take no view — then Anglada would have had a very real incentive, at the plea-withdrawal stage, to cover up his misconduct. This would mean that Anglada was laboring under an actual conflict of interest in undertaking to represent Segarra. See United States v. Burgos-Chaparro, 309 F.3d 50, 52 (1st Cir. 2002) (distinguishing ineffectiveness and conflict of interest claims). That type of claim, unlike an ineffectiveness claim, is not routinely relegated to collateral review.[2]

---

[2]Apart from justiciability concerns, there is another important distinction between the two types of claims. When a defendant's claim rests solely on allegations that counsel performed ineffectively or incompetently, the defendant must also show prejudice. See Strickland, 466 U.S. at 692-93; Scarpa v. DuBois, 38 F.3d 1, 8-9 (1st Cir. 1994). When, however, a defendant makes a timely and colorable showing that his counsel labored under an actual conflict of interest, he may be entitled to relief without regard to proof of prejudice. See Cuyler v. Sullivan, 446

We add a caveat. Not every bare allegation of a disagreement between lawyer and client is enough to trigger a right to new counsel. See, e.g., United States v. Mota-Santana, 391 F.3d 42, 47 (1st Cir. 2004); United States v. Myers, 294 F.3d 203, 206-08 (1st Cir. 2002). An even smaller subset of such disagreements will (even arguably) amount to an actual conflict of interest. Lawyers ordinarily aspire to do their best for clients. Thus, an "actual conflict," for Sixth Amendment purposes, entails a conflict of interest sufficient to displace that presumption — one "that adversely affects counsel's performance." Mickens v. Taylor, 535 U.S. 162, 172 n.5 (2002).[3]

Here, more than a mere disagreement is at issue. Segarra's conflict of interest claim was seasonably raised below. The charge is one of improper and unethical conduct, not merely professional negligence. And, finally, the record provides enough indicia of an actual conflict of interest to make the claim colorable. Hence, the claim warrants review on direct appeal. Cf. United States v. Colón-Torres, 382 F.3d 76, 84-85 (1st Cir. 2004)

_____

U.S. 335, 349-50 (1980); Torres-Rosario, 447 F.3d at 64.

[3]Mickens — a habeas case — narrowed the precedential orbit of Cuyler v. Sullivan, 446 U.S. 335 (1980), upon which this court, like many courts of appeals, had relied in resolving conflict of interest cases. See Mickens, 535 U.S. at 174-75. While this opinion draws upon principles extracted from pre-Mickens case law, neither Mickens nor Sullivan is directly applicable.

(discussing, under the rubric of ineffectiveness, the appropriateness of direct review of conflict of interest claim).

This brings us to why we believe that Segarra made a sufficient showing of an actual conflict to render his claim colorable and justify further inquiry by the district court. He alleged, with specificity, that Anglada used improper means — for example, concealing exculpatory evidence from the court, brainwashing Segarra's ailing wife and bringing her to prison without any forewarning, and refusing to leave without Segarra's signature on a pre-prepared agreement — to secure his acquiescence in a plea he did not want. Segarra describes a motive for the misconduct — the attorney's eschewal of any semblance of meaningful trial preparation — that is not implausible on its face. The indirect evidence, such as the fact that Segarra made his retraction request soon after the change-of-plea hearing, lends some credence to the charges. While it may well be that Segarra's accusations will melt away in the crucible of adversarial testing, we think that he offered enough to warrant a hearing. Cf. Mota-Santana, 391 F.3d at 45, 47 (declining to grant relief sought — there, reversal for district court's refusal to appoint new counsel — upon undeveloped and purely conclusory accusation that attorney "deceived" defendant).

The non-evidentiary hearing held by the district court did not suffice. Segarra's charges, if founded, embody conduct

-10-

different in both kind and degree from a defense attorney's customary encouragement to his client — even strong encouragement — to avoid a trial by entering into a negotiated arrangement with the government. The charges impute to Anglada conduct that is both improper and unethical.[4] An attorney who has committed such misconduct — and we again emphasize that the alleged misconduct remains to be proven — would have a very powerful incentive to sweep it under the rug.

In such a situation, an inevitable tension arises between advancing the client's interests and preserving the attorney's reputation (and, perhaps, his livelihood). See Colón-Torres, 382 F.3d at 90; Sanchez-Barreto, 93 F.3d at 21. That tension is enough to sow the seeds for an actual conflict of interest. See Sanchez-Barreto, 93 F.3d at 20 (recognizing actual conflict of interest when "pursuit of a client's interests would lead to evidence of an attorney's malpractice").

The way in which Anglada responded to Segarra's charges reinforces our intuition that Anglada could not appropriately represent Segarra at the plea-withdrawal hearing. Although Anglada admitted that Segarra had clamored, over and over, to withdraw his plea, beginning soon after it was entered, he made no effort to carry out his client's wishes until a frustrated Segarra forced his

---

[4]This, among other things, distinguishes this case from Torres-Rosario, in which the defendant alleged that the prosecutor had been guilty of improper conduct. See 447 F.3d at 64-65.

-11-

hand by filing the first of a series of pro se motions with the district court. Then, at the hearing itself, Anglada opposed retraction of the plea; attempted to undermine the factual basis on which the plea-withdrawal request rested; dodged Segarra's charges of coercion; and went so far as to proffer evidence contradicting Segarra's version of the relevant events.[5] With Anglada so busily engaged in defending his own integrity and the bona fides of the plea that he had orchestrated, his interests and Segarra's were clearly at odds.

The government suggests that the statements made by Segarra during the change-of-plea hearing undercut his Sixth Amendment challenge. This suggestion is not frivolous: from time to time, we have looked to such statements as a basis for denying plea withdrawals. See, e.g., United States v. Alegria, 192 F.3d 179, 186 (1st Cir. 1999) (explaining that, ordinarily, "a defendant who asserts a fact in answer to a judge's question during a change-of-plea proceeding ought to be bound by that answer"). That principle, however, does not apply in "exceptional circumstances." Id.

_____

[5]We fully appreciate that Anglada may have felt it necessary to take these steps in order both to defend his own reputation and to fulfill what he sincerely believed to be his obligations as an officer of the court. But that is precisely the point: if either or both of these concerns were paramount, Anglada could hardly be expected to represent Segarra's interests. A lawyer burdened with conflicting allegiances to two masters serves neither well.

This case potentially fits within that exception. On Segarra's theory of what transpired, clearly articulated in the court below, the statements that he made at the change-of-plea hearing were the product of Anglada's manipulative conduct rather than proof of the absence of improper manipulation. Given Segarra's preliminary showing, he was entitled to have that theory advanced by conflict-free counsel and evaluated by the district court.

The short of it is that the Sixth Amendment entitled Segarra to the assistance of counsel at his plea-withdrawal hearing. He did not receive that assistance. Despite having made a timely request for new counsel and a colorable showing that his then-attorney was hampered by an actual conflict of interest, Segarra was left to fend for himself at this critical stage in the proceedings. That was constitutionally impermissible. See Colón-Torres, 382 F.3d at 90; Sanchez-Barreto, 93 F.3d at 22. This shortcoming taints the district court's determination that Segarra failed to adduce sufficient evidence of manipulation or coercion.

That leaves uncertain the nature of the remedy. In this instance we choose, in the exercise of our discretion, to leave the sentence intact and remand to the district court for the appointment of conflict-free counsel so that the court can hold a full hearing on Segarra's plea-withdrawal motion.[6] If Segarra prevails in that

---

[6]We suggest that the district court may wish to consider asking Segarra's appellate counsel, who has ably represented him in this court, to accept that appointment.

-13-

proceeding, the district court should then vacate his sentence, annul his guilty plea, and conduct such further proceedings as may be necessary.  If, however, the government prevails, the district court, if requested to do so by Segarra, shall vacate the existing sentence pro forma and immediately reimpose the same sentence, thereby giving Segarra an opportunity to appeal the court's denial of his plea-withdrawal motion.

We need go no further.  For the reasons elucidated above, we remand this matter for further proceedings consistent with this opinion.  We express no opinion as to the outcome of the anticipated plea-withdrawal hearing.

**So Ordered**.