**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 19-4801

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

TEKOA TOBIAS GLOVER,

Defendant – Appellant.

Appeal from the United States District Court for the District of South Carolina, at Greenville.  Timothy M. Cain, District Judge.  (6:18-cr-00588-TMC-1)

Argued:  May 5, 2021                                         Decided:  August 9, 2021

Before GREGORY, Chief Judge, KEENAN, and QUATTLEBAUM, Circuit Judges.

Remanded with instructions by published opinion.  Chief Judge Gregory wrote the opinion, in which Judge Keenan concurred.  Judge Quattlebaum concurred in the judgment and wrote a concurring opinion.

**ARGUED:**  Jonathan McKey Milling, MILLING LAW FIRM, LLC, Columbia, South Carolina, for Appellant.  Ezra Addison Gantt, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee.  **ON BRIEF:**  Peter M. McCoy, Jr., United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee.

GREGORY, Chief Judge:

Tekoa Glover raises two independent claims for relief from his mandatory-minimum, 120-month sentence following his guilty plea:  First, he argues that we should vacate his conviction and remand this case for a hearing on whether the government wrongly seized untainted assets needed to hire the counsel of his choice.  Second, he argues that his counsel should have been substituted at his plea withdrawal hearing because his attorney was laboring under a conflict of interest.  A prior decision of this Court forecloses Glover's first claim.  But we agree with Glover that his attorney had a conflict of interest at his plea withdrawal hearing and that substitute counsel should have represented him there.  We accordingly remand this case for a plea withdrawal hearing with new counsel.

***

Glover appeals his sentence for conspiracy to possess with intent to distribute 500 grams or more of a drug containing cocaine, heroin, fentanyl, methamphetamine, and marijuana; and conspiracy to conduct financial and monetary transactions involving proceeds of unlawful activity.  21 U.S.C. §§ 841(a)(1), (b)(1)(A)–(D); 21 U.S.C. § 846; 18 U.S.C. § 1957.  Pursuant to a plea agreement, Glover pleaded guilty to two of five counts in a third superseding indictment before being sentenced.

When he was first facing charges, and long before he pleaded guilty, Glover attempted to hire an attorney in Atlanta to represent him.  Glover's friends and family sent the attorney tens of thousands of dollars as an advance for his services.  But instead of using the funds to prepare Glover's defense (or returning them), the attorney sent them to the Drug Enforcement Administration.  The attorney apparently believed the funds were drug proceeds.  The

2

government subsequently seized the funds under 21 U.S.C. §§ 881(a)(6) (subjecting to seizure and forfeiture funds traceable to drug proceeds).

Immediately and persistently, Glover began filing pro se motions arguing that the funds were not tainted; that he could only hire counsel with the seized funds; and that he was entitled to counsel of his choosing if he could afford it. *See* J.A. 29–32; 34; 39; 61. During this period, Glover's relationship with his first appointed lawyer deteriorated, and the district court assigned him new appointed counsel, Hank Ehlies. Both Glover and Ehlies requested a hearing pursuant to *United States v. Farmer*, 274 F.3d 800 (4th Cir. 2001), on the subject of the seized funds. Thereafter, the government filed a response titled "Possible *Farmer* Hearing Concerning Seizure of Assets," which expressly noted that "a hearing pursuant to *United States v. Farmer* . . . might be necessary in order to confirm the propriety of any seizures in this case." J.A. 140.

Instead of setting such a hearing, the district court held a hearing five months after Glover's first *Farmer* request focused in relevant part on Glover's frequent pro se motions and whether Glover wanted to continue to be represented by counsel or represent himself—something Glover persistently declined to do. The district court stated that it was "not going to get into" the *Farmer* issue and would not appoint new counsel. J.A. 161. For his part, Glover continued to contend that the funds were inappropriately seized and that the seizure was interfering with his right to counsel, but the Court made clear that it would not address the issue unless Glover chose to represent himself. Glover responded:

> To me, it feels like my lawyer is not working for me. . . . I am still pushing to the point that I want to be represented by counsel of choice, and the only way we can get to that aspect of the case is [to] have a hearing about the

3

money. I think that without that, I am still forced to keep Mr. Ehlies because I am not prepared, I am not knowledgeable enough [about] the system to be coming in court fighting against everybody.

J.A. 166–67.

Glover pleaded guilty three days later. J.A. 174. He had an extensive Rule 11 colloquy that included the following exchange:

> Q. Are you satisfied with the services of your attorney?
> A. Yes.
> Q. Have you had enough time to meet with your lawyer and to discuss your case?
> A. Yes, sir.
> Q. Has your attorney advised you of your rights and explained the court process to you?
> A. Yes.
> Q. Has your attorney explained the possible consequences that may take place as a result of this proceeding?
> A. Yes.
> Q. Have you told your attorney everything that you want to tell him?
> A. Yes.
> Q: Has your attorney done everything that you have asked him to do?
> A. Pretty much.
> Q. Is there anything that you would like for your attorney to do for you at this time before we proceed any further with your case?
> A. No, sir.
> Q. Do you authorize and request your attorney to speak on your behalf today?
> A. Yes, sir.

J.A. 179–80.

The court accepted Glover's plea pursuant to a plea agreement. Relevant to this appeal, that agreement included the following language: "The Defendant . . . waives the right to contest either the conviction or the sentence in any direct appeal or other post-conviction action, including any proceedings under 28 U.S.C. § 2255. This waiver does not apply to claims of ineffective assistance of counsel[.]" J.A. 220.

4

After the plea hearing but before sentencing, Glover filed a pro se motion requesting to withdraw his plea. Such requests are contemplated by the Federal Rules of Criminal Procedure, though a district court need only grant them if they are filed for a "fair and just reason." *See* Fed. R. Crim. P. 11(d)(2)(b) ("A defendant may withdraw a plea of guilty or nolo contendere . . . after the court accepts the plea, but before it imposes sentence[,] if . . . the defendant can show a fair and just reason for requesting the withdrawal."). Glover's motion contained numerous allegations of misconduct by Ehlies. Glover asserted (among other things) that his counsel told him to take the plea because refusing would "upset" and "offend" the judge and result in him receiving a life sentence. J.A. 230, 231. Glover also alleged that Ehlies indicated his defense would be severely hamstrung if he chose not to take the plea. Specifically, Glover alleged that Ehlies said he had not prepared for a suppression hearing that was scheduled to take place the day after the change-of-plea hearing, and that Glover would not be able to receive a continuance for Ehlies to prepare for the hearing if Glover decided not to take the plea. J.A. 231. Prior to sentencing, the court scheduled a hearing on Glover's plea withdrawal motion and other matters.

There, Glover requested new counsel and asserted that Ehlies had a conflict of interest in representing him in the hearing given his allegations. The district court declined to appoint new counsel, instead determining that Glover could either proceed pro se (which he again declined to do) or be represented by Ehlies. The district court stated:

> [A] request for change in counsel cannot be considered justifiable if it proceeds from a transparent plot to bring about delay. . . . [W]e have been over this numerous times, the Defendant is on his third lawyer. I have told him he is free to hire anybody he wants to hire, he has indicated to me that he does not want to represent himself. . . .

5

The motion to relieve Mr. Ehiles and appoint substitute counsel is denied. And again, although I am repeating myself, there is no hybrid representation in this case.

J.A. 308.

Ehlies subsequently told the district court that his client's Rule 11 colloquy was appropriate and that a plea withdrawal hearing was not in Glover's best interest. He said that he had "considered that and his request, and I have looked through Rule 11, it is perfectly well done, and it is not in his best interest, and that is why I did not endorse or file such a motion." J.A. 309.[1] Ehlies went on to inform the district court that he could say more in a hearing under 28 U.S.C. § 2255; that there were reasons that he believed the plea agreement was very favorable to his client; that those reasons were related at least in part to fact development in the case; and that he was not "surprised" that his client had agreed to the plea deal. J.A. 317–18.

The district court concluded that Glover's statements about Ehlies were not credible; that Glover's statements in the Rule 11 colloquy were credible; and that it would not grant Glover's pro se motion to withdraw the plea. J.A. 322–29. This appeal followed.

I.

Glover first argues that his conviction should be vacated and this case remanded for the *Farmer* hearing that he requested so many times below. "[T]he Sixth Amendment guarantees

---

[1] As the government notes in its brief, the calculated Guideline range for Glover's offenses was 292 to 365 months. J.A. 425. The 120-month sentence he received in accordance with his plea is accordingly much shorter than what he would have faced at trial.

a defendant the right to be represented by an otherwise qualified attorney whom that defendant can afford to hire." *Luis v. United States*, 136 S. Ct. 1083, 1090 (2018) (plurality op.); *see also id.* at 1096 (Alito, J., concurring) (agreeing that "a pretrial freeze of untainted assets violates a criminal defendant's Sixth Amendment right to counsel of choice"). When a defendant sufficiently alleges that the government may have wrongly seized assets needed to hire counsel of choice, due process requires a hearing where the defendant may prove by a preponderance of the evidence that the seized assets are untainted. *Farmer*, 274 F.3d at 805.

The government contends that the district court lacked jurisdiction to hold a *Farmer* hearing in this case because the funds were seized civilly, not criminally. *Compare* 21 U.S.C. § 881 (civil forfeiture) *to* 21 U.S.C. § 853 (criminal forfeiture). We think the appropriate venue for the jurisdictional argument would have been the *Farmer* hearing itself, and in any event do not agree that the distinction will create a jurisdictional prohibition to the court's power to hold the hearing. The hearing is the means by which the district court may determine whether a potential Sixth Amendment problem is infecting an ongoing criminal proceeding and determine appropriate next steps. A criminal defendant's request for such a hearing bears little resemblance to a key case the government relies upon, *Ibarra v. United States*, 120 F.3d 472, 475 (4th Cir. 1997), where this Court held that a district court lacked subject-matter jurisdiction to entertain a plaintiff's civil lawsuit seeking return of administratively-seized assets. In short, setting aside whether we could remand this particular case for a *Farmer* hearing at this stage (now that the administrative seizure has been completed), we are inclined to agree with Glover that the district court ought to have timely set and conducted a *Farmer* hearing below. The

government also recognized the likely need for a hearing in the proceedings before the district court. *See, e.g.*, J.A. 140.

However, we are constrained to deny Glover relief on this claim.[2] We have no doubt that Glover's counsel on appeal argues otherwise in good faith. But in *United States v. Moussaoui*, 591 F.3d 263, 279 (4th Cir. 2010), this Court rejected the defendant's attempt to withdraw his plea post-sentencing based on the alleged deprivation of access to counsel of choice, among other claims. The factual circumstances in *Moussaoui* were quite different than the circumstances here. But this Court did not deny the defendant's claim on the merits. *Id.* Instead, we held that "[w]hen a defendant pleads guilty, he waives all nonjurisdictional defects in the proceedings conducted prior to entry of the plea" and "has no non-jurisdictional ground upon which to attack that judgment except the inadequacy of the plea [under Rule 11]." *Id.*

In addition to Rule 11 problems, ineffective assistance of counsel claims regarding an attorney's pre-plea conduct are also cognizable on appeal post-plea. *See, e.g.*, *Hill v. Lockhart*, 474 U.S. 52, 56–57 (1985); *Padilla v. Kentucky*, 559 U.S. 356, 364 (2010). Like choice-of-counsel claims, ineffective assistance claims allege Sixth Amendment violations and implicate a defendant's decision to plead guilty. *See Hill*, 474 U.S. at 56–57. For this reason, two of our sister circuits have held that choice-of-counsel claims essentially challenge the voluntariness of a plea, and therefore are not forfeited when a defendant enters a guilty plea. *See United States v. Smith*, 618 F.3d 657, 663 (7th Cir. 2010) (counsel of choice claims are not waived by a guilty plea); *United States v. Sanchez Guerrero*, 546 F.3d 328, 332 (5th Cir. 2008) (same).

---

[2] For this reason, we decline to address whether Glover's appellate waiver bars his *Farmer* claim.

8

Though different, claims regarding the right to proceed pro se have been treated similarly: In *United States v. Hernandez*, the Ninth Circuit held that claims related to a district court's treatment of pre-plea requests to proceed pro se could be addressed on appeal post-plea. 203 F.3d 614, 626–27 (9th Cir. 2010) (abrogated on other grounds by *Indiana v. Edwards*, 554 U.S. 164 (2008)).

After pleading guilty, the defendant in *Moussaoui* raised a choice-of-counsel claim (not a *Farmer* claim) and a claim regarding his ability to "effectively proceed pro se." 591 F.3d at 279. This Court considered the claims together and decided neither claim on the merits. Without addressing the Seventh Circuit's approach in *Smith* or the Fifth Circuit's in *Sanchez Guerrero*—both choice-of-counsel cases—*Moussaoui* rejected the Ninth Circuit's approach in *Hernandez* and implied that the same considerations apply to post-plea arguments regarding a defendant's ability to proceed pro se as to a defendant's request for counsel of choice. *See* 591 F.3d at 279–80 & n.12.

Whether it may be appropriate for the en banc Court to revisit this aspect of *Moussaoui,* or whether *Moussaoui* might not apply to the circumstances of this case, are questions that no party has raised or argued. (Indeed, neither the government nor Glover cited *Moussaoui*, nor filed a letter with this Court under the Federal Rule of Appellate Procedure 28(j) on this subject, though it was raised at oral argument and appears to restrict a panel of this Court from granting Glover relief on one of the two claims he presents in this appeal.) We will not do so on our own. We therefore proceed to Glover's other claim for relief.

9

Glover next argues that his attorney was impaired by a conflict of interest at his plea withdrawal hearing. As the government notes, this claim implicates whether Glover's counsel was constitutionally effective. Gov't Br. 23; *Cuyler v. Sullivan*, 446 U.S. 335, 349–50 (1980) (holding that an actual conflict of interest renders counsel ineffective). This Court reserves ineffective assistance of counsel claims for resolution on collateral appeal unless counsel's ineffectiveness conclusively appears on the face of the record. *See, e.g.*, *United States v. Richardson*, 195 F.3d 192, 198 (4th Cir. 1999). For the reasons discussed below, Ehlies' performance at the plea withdrawal hearing meets that standard.

Defendants have the right to counsel at all critical stages of a criminal proceeding. *See, e.g.*, *Iowa v. Tovar*, 541 U.S. 77, 80 (2004). This includes plea hearings, *id.*, and naturally includes plea withdrawal hearings, too. Our sister circuits agree. *See United States v. Sanchez-Barreto*, 93 F.3d 17, 20 (1st Cir. 1996); *United States v. Garrett*, 90 F.3d 210, 212 (7th Cir. 1996); *United States v. White*, 659 F.2d 231, 233 (D.C. Cir. 1981); *United States v. Crowley*, 529 F.2d 1066, 1069 (3d Cir. 1976).

To prevail, defendants claiming ineffective assistance must prove that their attorney's conduct was both deficient and prejudicial. But in cases where an attorney has an actual conflict of interest, prejudice is presumed if the defendant "demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.'" *Strickland v. Washington*, 466 U.S. 668, 692 (1984) (quoting *Cuyler*, 446 U.S. at 350, 348); *see also Garza*, 139 S. Ct. at 744 ("[N]o

showing of prejudice is necessary 'if the accused is denied counsel at a critical stage of his trial'" (quoting *United States v. Cronic*, 466 U.S. 648, 659 (1984)).

*Cuyler* dealt with an actual conflict created by multiple representation. *See* 446 U.S. at 350. But conflicts also arise when a lawyer must choose between representing a client's interests and implicating herself in her own serious misconduct. Lawyers "cannot reasonably be expected to make" arguments advancing a client's claim that, in essence, "denigrate their own performance." *Christeson v. Roper*, 574 U.S. 373, 378 (2015). A "'significant conflict of interest'" arises when an attorney's 'interest in avoiding damage to [his] own reputation' is at odds with his client's 'strongest argument—*i.e.*, that his attorneys had abandoned him.'" *Id.* (quoting *Maples v. Thomas*, 565 U.S. 266, 285–86 & n. 8 (2012)). When a defendant files a pro se motion to withdraw her plea based on alleged misconduct by her attorney, it puts her attorney in exactly this position. *Sanchez-Barreto*, 93 F.3d at 20–21 (remanding for a new plea withdrawal hearing where the defendant "plainly alleged facts amounting to malpractice, if found to be true"); *United States v. Ellison*, 798 F.2d 1102, 1107 (7th Cir. 1986) (same); *cf. Wilson v. Mintzes*, 761 F.2d 275, 286 (6th Cir. 1985) (reversing where "counsel's loyalty to his own interests rather than those of his client adversely affected his performance . . . as well as his tactical conduct of the case").

In this case, Glover's pro se motion to withdraw his plea rested on allegations that his lawyer inappropriately coerced him into taking it. Specifically, Glover alleges that his attorney foreclosed his most obvious strategic move if he failed to take the plea—a suppression hearing—and told Glover that such a path was unavailable because counsel

11

had not prepared for such a hearing and would not be able to get a continuance. Glover alleges that he directly told counsel that counsel was "selling him out by not giving him any chance at a suppression motion, thereby leaving Defendant with no option but to plea," and Ehlies replied that "life isn't fair." J.A. 231. Glover wrote that his "plea was the result of coercion" and alleged that counsel "failed to investigate the case fully"; "failed to subpoena witnesses for the suppression hearing"; "forced [him] into the plea within 72 hours"; "told him to agree to the judge when asked questions about the plea"; and stated that Glover should take the plea because his failure to do so would "make [Ehlies] look bad and upset the judge." *See* J.A. 230, 232.

At the plea withdrawal hearing, and on the record, Ehlies argued against Glover's motion to withdraw. He defended the Rule 11 colloquy, contended that Glover's motion was not in his best interest, and explicitly stated that he did not "endorse" his client's motion. J.A. 309. Ehlies even went so far as to imply that Glover's decision to plead guilty was based in part on fact development and that Ehlies could discuss it more if Glover waived attorney-client privilege concerns by filing a petition pursuant to 28 U.S.C. § 2255.

Ehlies' arguments at the plea withdrawal hearing made his conflict evident. A defendant is entitled to counsel "whose undivided loyalties lie with his client." *United States v. Jeffers*, 520 F.2d 1256, 1263 (7th Cir. 1975). But Glover's allegations made that obligation difficult for Ehlies to meet. If true, Ehlies' alleged conduct went well beyond differences in strategy between an attorney and his client; it would amount to malpractice. *See Sanchez-Barreto*, 93 F.3d at 22 (noting the "clarity and specificity" of the malpractice allegations in the defendant's pro se plea-withdrawal motion); *Ellison*, 798 F.2d at 1107

12

(noting that "if the allegations in defendant's [pro se plea-withdrawal motion] were true, [the attorney's] actions would be tantamount to malpractice").

And the record includes more than allegations of attorney misconduct. It contains specific in-court statements by Glover's attorney against his client's motion and in favor of counsel's representation in the case. Like in *Sanchez-Barreto*, Glover's counsel essentially "extolled the benefits of the plea agreement, [and] stated that there were no errors in the earlier Rule 11 plea colloquy conducted by the district court[] nor bases in law for [his client's] pro se plea-withdrawal motion." 93 F.3d at 21. Just as here, the defendant's counsel also contended "that [his client] was better off with the plea bargain, given the unlikelihood that he could prevail at trial." *Id.* In other words, Glover's counsel made statements that were "not merely neutral on the withdrawal issue," but "in substance . . . argued against [his client]." *United States v. Joslin*, 434 F.2d 526, 529 (D.C. Cir. 1970). Ehlies stated that he "did not endorse . . . [Glover's] motion," contended that Glover's Rule 11 colloquy was "perfectly well done," and functionally suggested that his client pleaded guilty because he *was* guilty and could not win at trial. By effectively "testifying against his client," Glover's counsel "acted as both counselor and witness for the prosecution. These roles are inherently inconsistent." *Ellison*, 798 F.2d at 1107. And as our sister circuits concluded in *Sanchez-Barreto*, *Ellison*, and *Joslin*, this conflict requires that we remand this case for Glover to receive a new plea withdrawal hearing.

At oral argument, the government agreed that Glover's claims of attorney misconduct raised a conflict, noting: "A conflict did arise whenever he accused his counsel of coercing him into pleading guilty, but that does not mean that he actually coerced him

13

into pleading guilty." Oral Argument at 44:23-44:39. The government's focus on this distinction matters very much to determining, on remand, whether Glover's accusations are true.[3] But the distinction is not relevant to whether this Court is required to remand this case for a new plea withdrawal hearing where the record establishes that Glover was left functionally without counsel at this critical stage of his criminal proceeding.

The government is concerned that a ruling in favor of Glover here could turn this case into an Ouroboros on remand, with Glover in each plea withdrawal hearing refusing to proceed pro se while alleging misconduct on the part of his counsel. Considering the circumscribed issues that substitute counsel will face in a plea withdrawal hearing, we think such a gambit on Glover's part would fail. Should Glover decide to go forward with the plea withdrawal hearing, his new attorney will investigate the claims; present what she finds, as well as an argument supporting her client's motion, to the district court; and leave to the district court the decision whether Glover is entitled to withdraw his plea based on the evidence presented. Should Glover and his new counsel disagree with regard to counsel's reasoned strategy, or should Glover level speculative accusations against his new counsel, those differences alone are insufficient to create a conflict of interest like that we have identified here. *Cf. United States v. Soldevila-Lopez*, 17 F.3d 480, 487 (1st Cir. 1994) (noting that speculative or bare allegations of a conflict of interest are insufficient to support a claim of ineffective assistance).

---

[3] To be clear, nothing in this opinion should be construed to imply that Glover's plea withdrawal motion should succeed or that his allegations of misconduct are true.

14

We recognize that the district court dealt with a difficult situation involving many pro se filings by Glover and repeated conflict between Glover and court-appointed counsel—indeed, counsel who ultimately obtained a good result for his client. But in this case, the arguments made by counsel were, in fact, contrary to his client's intent and interest in filing the pro se plea withdrawal motion. They also were, in fact, in favor of counsel's own representation in the case and contrary to Glover's accusations of counsel's misconduct. Once Glover raised clear and concrete claims alleging with specificity that his attorney was acting against his interest, and certainly after Glover's counsel presented argument against granting Glover's motion at the plea withdrawal hearing, a conflict of interest was plain. At that point, conflict-free counsel was required. "From the very beginning, our state and national constitutions and laws have laid great emphasis on procedural and substantive safeguards designed to assure fair trials before impartial tribunals in which every defendant stands equal before the law. This noble ideal cannot be realized if the poor man charged with crime has to face his accusers without a lawyer to assist him." *Gideon v. Wainwright*, 372 U.S. 335, 344 (1963).

Accordingly, we remand this case for a new plea withdrawal hearing, and direct that conflict-free counsel represent Glover.[4]

*REMANDED with INSTRUCTIONS.*

---

[4] This Court takes note of Glover's pro se July 1, 2021 letter providing this Court with a notice of supplemental authority pursuant to Fed. R. App. P. 28(j). Because this opinion resolves this appeal, Glover's pending motion for pro se oral argument is dismissed as moot.

15

QUATTLEBAUM, Circuit Judge, concurring in the judgment:

I agree that, under the circumstances of this case, a remand for a new plea withdrawal hearing with conflict-free counsel is necessary. While I concur in the judgment reached by the majority, I get there by a slightly different path.

First, I agree with the majority that Glover's claim that he was entitled to a *Farmer*[1] hearing is barred by his guilty plea. *United States v. Moussaoui* squarely rejected the argument that structural errors are exempt from the waiver of all nonjurisdictional errors that accompanies a guilty plea. 591 F.3d 263, 279–80 (4th Cir. 2010). I would make a hard stop at that point. To me, whether—but for the waiver—Glover was entitled to such a hearing is not at all clear.[2] More importantly, in light of Glover's guilty plea, any discussion of that issue is dicta.

Second, I have a slightly different view of Glover's conflict-free counsel claim. The majority begins its analysis by stating that "this claim implicates whether Glover's counsel was constitutionally effective." Maj. Op. at 10. Then, after reciting the elements of a *Strickland* claim, the majority concludes that we should depart from our well-established

---

[1] *United States v. Farmer*, 274 F.3d 800 (4th Cir. 2001).

[2] Glover repeatedly stated that the funds at issue were paid by his family and friends, and he expressly disclaimed any ownership in the funds. *See* J.A. 41 ("Petitioner contends that none of the money was 'his' money, but money given by law abiding citizens for his defense."). The Supreme Court has held that "[a] defendant has no Sixth Amendment right to spend another person's money for services rendered by an attorney, even if those funds are the only way that that defendant will be able to retain the attorney of his choice." *Caplin & Drysdale v. United States, Chartered*, 491 U.S. 617, 626 (1989). Perhaps, despite that clear statement by the Supreme Court, Glover was still entitled to a *Farmer* hearing. Or maybe not.

16

case law declining to reach ineffectiveness challenges on direct appeal because "counsel's ineffectiveness conclusively appears on the face of the record." *Id*. While I agree that the proper analysis of Glover's claim implicates the Sixth Amendment right to the effective assistance of counsel, I analyze the issue differently.

We have repeatedly held that "[a] claim of ineffective assistance of counsel should be raised by [a habeas corpus] motion under 28 U.S.C. § 2255 in the district court and not on direct appeal, unless it conclusively appears from the record that defense counsel did not provide effective representation." *United States v. Richardson*, 195 F.3d 192, 198 (4th Cir. 1999) (alteration in original) (internal quotation marks omitted). This is not one of those rare situations. In fact, the claim advanced by Glover is not a standard ineffective assistance of counsel claim. Even Glover says as much. *See* Reply Brief of Appellant at 10 ("It isn't that Glover's counsel was ineffective; he had no counsel despite repeated requests for representation."). Instead, Glover is raising a preserved challenge to the district court's failure to appoint conflict-free counsel for his plea withdrawal hearing.

I have no problem concurring with the majority that this issue can be addressed on direct appeal. But it is not because the record establishes ineffective assistance of counsel. It is because Glover's allegations, if true, are sufficiently detailed to establish a conflict of interest. While we have never addressed the precise issue presented here, the First Circuit has. In *United States v. Segarra-Rivera*, it held the type of claim Glover makes, "unlike an ineffectiveness claim, is not routinely relegated to collateral review." 473 F.3d 381, 385 (1st Cir. 2007). That makes sense, as Glover is not directly seeking a judicial determination that his counsel was constitutionally ineffective. Rather, he is claiming that he was deprived

17

of counsel at a critical stage of the proceedings to which the rights attendant to the Sixth Amendment attach.

The proper focus, therefore, should be whether Glover's allegations in his pro se motion were sufficient to require the appointment of conflict-free counsel. In that regard, I disagree with the majority's conclusion that "[counsel's] performance at the plea withdrawal hearing," Maj. Op. at 10, conclusively constitutes ineffective assistance of counsel. What counsel said or did at the plea withdrawal hearing, to me, is not the primary issue based on the claim Glover advances. The Sixth Amendment conflict of interest arose when Glover alleged, in detail, that counsel coerced him into pleading guilty. As the First Circuit held in *Segarra-Rivera*, "[i]n such a situation, an inevitable tension arises between advancing the client's interests and preserving the attorney's reputation (and, perhaps, his livelihood)." 473 F.3d at 386. Indeed, "[t]hat tension is enough to sow the seeds for an actual conflict of interest."[3] *Id.*

Several other observations on Glover's second claim. Glover created a difficult situation for both the district court and his counsel. From the outset, Glover expressed constant dissatisfaction with his court-appointed attorneys and the manner in which they were litigating his case. He submitted a barrage of pro se filings, ranging from letters to the

[3] Illustrating this tension, Glover's allegations put counsel in a catch-22. Unless he actually coerced Glover, he could not concede that the allegations were true. And he likewise could not provide any detail as to their falsity because doing so would have revealed privileged conversations. But because of that predicament, counsel could not prosecute the motion and Glover was effectively left to fend for himself on his plea withdrawal motion—a point in the proceedings that even the government concedes is critical enough to require conflict-free counsel.

18

district court to discovery motions to motions to relieve counsel. By my count, he filed more than forty motions—most of which were lengthy and substantive. For that reason, the government's argument that today's opinion could lead to further manipulation of the criminal process has some appeal. But I agree with the majority's closing remarks designed to thwart that type of abusive behavior. And regardless, the Sixth Amendment right to conflict-free counsel applies to all defendants—including those who are unsympathetic and manipulative. Thus, at the end of the day, Glover's detailed—even if so far unsubstantiated—allegations of coercion require a new plea withdrawal hearing with his third court-appointed lawyer.

But the scope of the hearing on remand should not be endless. Instead, it should be limited to the discrete inquiry of whether Glover can meet the standard for withdrawal of his plea. It is not an opportunity for him to air his every grievance against his prior counsel. Moreover, the district court—as it did below—should be able to take reasonable steps to maintain an orderly proceeding, such as prohibiting hybrid representation and precluding Glover from submitting pro se filings while represented by counsel.

Finally, I, like the First Circuit in *Segarra-Rivera*, would "add a caveat" to today's holding. 473 F.3d at 385. "Not every bare allegation of a disagreement between lawyer and client is enough to trigger a right to new counsel. An even smaller subset of such disagreements will (even arguably) amount to an actual conflict of interest." *Id.* (citations omitted). Indeed, a mere disagreement, standing alone, is insufficient, as a defendant must "provide[] enough indicia of actual conflict of interest to make the claim colorable." *Id.* And as the majority outlines, Glover has done so here by offering specific allegations that

all would agree, if true, constitute an actual conflict. Thus, having met that preliminary burden, the district court's failure to appoint conflict-free counsel deprived Glover of his right to the effective assistance of counsel—an error that requires a remand.[4]

---

[4] My concurrence with the majority should not be construed as expressing an opinion one way or the other as to the merits of Glover's motion to withdraw his guilty plea. I take no position on the merit of Glover's allegations.