**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 22-4073**

_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JAMES EDWIN RICE,

Defendant - Appellant.

_____

**No. 22-4074**

_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

SUSAN EILEEN RICE,

Defendant - Appellant.

_____

Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro.  Catherine C. Eagles, Chief District Judge.  (1:20-cr-00458-CCE-1; 1:20-cr-00458-CCE-2)

_____

Submitted:  March 21, 2023                                    Decided:  May 9, 2024

Before NIEMEYER and GREGORY, Circuit Judges, and FLOYD, Senior Circuit Judge.

Affirmed by unpublished per curiam opinion.

**ON BRIEF:** Wayne Buchanan Eads, EADS LAW, PLLC, Graham, North Carolina, for Appellant James Rice.  Deborrah L. Newton, NEWTON LAW, Raleigh, North Carolina, for Appellant Susan Rice.  David A. Hubbert, Deputy Assistant Attorney General, S. Robert Lyons, Chief, Criminal Appeals & Tax Enforcement Policy Section, Katie Bagley, Joseph B. Syverson, Hannah Cook, Tax Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Sandra J. Hairston, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Greensboro, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

James and Susan Rice (collectively, Appellants) appeal their conviction and sentence on ten counts relating to their failure to file tax returns and failure to pay employment taxes to the Internal Revenue Service (IRS). Finding no error, we affirm.

## I.

James Rice is an orthopedic surgeon, and together with his wife, Susan Rice, he owned and operated Sandhills Orthopaedic and Spine Clinic. J.A. 1242.* James provided medical services while Susan managed the administrative and financial side of the business. *Id.* Beginning in 2007, James and Susan (collectively, Appellants) failed to file the required quarterly Form 941 for the business and did not pay over any employment taxes to the IRS. J.A. 1243–44. Despite their failure to pay employment taxes, Appellants continued to withhold those taxes from their employees' pay. J.A. 1244. They issued W-2s to their employees showing that the taxes had been withheld but did not submit the W-2s to the IRS or Social Security Administration as required. *Id.* At the same time, Appellants failed to file individual income tax returns, J.A. 1248, and James failed to file a corporate tax return for Financial Solutions Management, a corporation Appellants used for financial matters related to the operation of the Sandhills Clinic. J.A. 1243, 1249–50.

In 2020, a grand jury returned an eleven-count indictment against James for conspiracy to defraud the United States, evading payment of employment taxes, failing to pay over trust funds, failing to file individual income tax returns, and failing to file

---

* Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

corporate tax returns.  J.A. 23–43.  Susan was indicted as his co-defendant on all but the corporate tax return counts.  *Id.*

Appellants were jointly represented by trial counsel.  After a three-day jury trial, Appellants were convicted on all counts.  J.A. 1085–88.  The district court sentenced James and Susan each to a 60-month term of incarceration.  J.A, 1185, 1192.  Appellants appealed, and now argue that trial counsel rendered ineffective assistance of counsel and that the district court erred when calculating the applicable loss amount under the U.S. Sentencing Guidelines.

II.

We review claims of ineffective assistance of counsel *de novo*.  *United States v. Faulls*, 821 F.3d 502, 507 (4th Cir. 2016).  But we consider ineffective assistance of counsel claims on direct appeal "only where the record conclusively establishes ineffective assistance."  *United States v. Baptiste*, 596 F.3d 216, 216 n.1 (4th Cir 2010).

When reviewing challenges to a district court's computation of tax loss for sentencing purposes, we review the district court's factual findings for clear error and its legal conclusions *de novo*.  *United States v. Oceanic Illsabe Ltd.*, 889 F.3d 178, 194 (4th Cir. 2018).  Errors at sentencing are also subject to harmless error review.  "A sentencing error is harmless if the resulting sentence was not longer than that to which [the defendant] would otherwise be subject."  *United States v. Hargrove*, 701 F.3d 156, 161 (4th Cir. 2012) (internal quotations omitted) (brackets in original).

4

III.

A.

To succeed on an ineffective assistance of counsel (IAC) claim, a defendant must prove "that their attorney's conduct was both deficient and prejudicial." *United States v. Glover*, 8 F.4th 239, 246 (4th Cir. 2021). The deficiency prong requires the defendant to show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The prejudice prong requires the defendant to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

"Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. A defendant can succeed on an IAC claim only if "counsel's representation fell below an objective standard of reasonableness." *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986). Trial counsel must be given "wide latitude . . . in making tactical decisions." *Strickland*, 466 U.S. at 689. And, in determining what constitutes "reasonable professional assistance," courts indulge a strong presumption that "under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (internal quotation omitted).

As a general matter, we do not consider IAC claims on direct appeal, and instead require defendants to raise them in a proceeding under 28 U.S.C. § 2255. This is because "[w]hen an ineffective-assistance claim is brought on direct appeal, appellate counsel and the court must proceed on a trial record not developed precisely for the object of litigating or preserving the claim and thus often incomplete or inadequate for this purpose." *Massaro v.*

5

*United States*, 530 U.S. 500, 504–05 (2003). "If the alleged error is one of commission, the record may reflect the action taken by counsel but not the reasons for it." *Id.* As a result, "[t]he appellate court may have no way of knowing whether a seemingly unusual or misguided action by counsel had a sound strategic motive or was taken because the counsel's alternatives were even worse." *Id.* And where, as here, the alleged error is one of omission, the trial record is unlikely to contain any evidence of such errors, "much less the reasons underlying them. And evidence of alleged conflicts of interest might be found only in attorney-client correspondence or other documents that, in the typical criminal trial, are not introduced." *Id.* For that reason, without further factual development of the record, "an appellate court may not be able to ascertain whether the alleged error was prejudicial." *Id.*

Appellants point to no on-the-record explanation or discussion of trial counsel motivations for any of the alleged errors. Appellants' primary allegations of ineffectiveness concern trial counsel's failure to investigate their case, failure to put on any evidence at trial, and decision to continue the joint representation of James and Susan despite an apparent conflict. But even a decision not to investigate certain defenses or not to put on particular evidence may be a reasonable strategic decision under the circumstances. "[I]nquiry into counsel's conversations with the defendant may be critical to a proper assessment of counsel's investigative decisions, just as it may be critical to a proper assessment of counsel's other litigation decisions." *Strickland*, 466 U.S. at 691. Evidence of such conversations cannot be found on the record of a direct appeal. Rather, further factual development through a § 2255 proceeding is necessary.

6

In any IAC claim alleging trial counsel's failure to introduce evidence, we require the defendant to make a specific proffer of what evidence should have been introduced. *See Goins v. Warden, Perry Corr. Inst.*, 576 F. App'x 167, 173 (rejecting an IAC claim because of the appellant's "failure to make a specific proffer" of "what an expert witness would have testified regarding the mental health evidence"); *see also Beaver v. Thompson*, 93 F.3d 1186, 1195 (4th Cir. 1996) ("[A]n allegation of inadequate investigation does not warrant habeas relief absent a proffer of what favorable evidence or testimony would have been produced."). Here, the record is utterly devoid of what evidence should have been introduced. This "reduces any claim of prejudice to mere speculation and is fatal to" an IAC claim. *Goins*, 576 F. App'x at 173.

For example, Appellants fault trial counsel for failing to present expert testimony and suggest that trial counsel's retained expert should have been called to testify. But beyond this bare allegation and an unsupported assertion that a "minimum tax defense requires engagement and use of the services of a tax accountant," Opening Br. at 18, Appellants do not explain what a tax expert could or should have testified to. In light of their failure to make such a proffer, we cannot determine whether trial counsel's failure to call an expert was deficient. Appellants also fault trial counsel for failing to object to certain evidence but make no effort to explain why the evidence was objectionable. Putting aside the insufficiency of the trial record to shed any light on these purported deficiencies, even Appellants' briefing on appeal contains no more than conclusory allegations of what trial counsel should have done.

7

Because Appellants raised no objection to their joint representation at trial, and indeed, affirmatively waived this conflict on the record on at least two occasions, *see* J.A. 46–47, 75–76, they can establish that such joint representation was constitutionally deficient only if they establish that (1) "an actual conflict of interest" (2) "adversely affected [their] lawyer's performance." *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980). Appellants' conclusory accusations that "counsel was restrained from engaging in an adequate defense for one defendant without causing prejudice to the positions of the other defendant," do not satisfy this requirement. Opening Br. at 24. And to the extent that they argue that trial counsel improperly encouraged them to waive this conflict, that accusation again turns on counsel's conversations with and advice to Appellants, which do not appear on the record.

Because the record does not conclusively establish trial counsel's ineffectiveness we defer consideration of Appellants' IAC claim. Of course, this decision in no way prejudices Appellants' ability to bring this claim in a § 2255 proceeding, where they can more fully develop the record.

B.

Appellants challenge their sentencing guideline calculation on the basis that the district court applied the wrong loss amount, which resulted in a higher sentence than that which should have been imposed. When preparing the pre-sentence report, the probation office calculated the tax loss to be $2,435,361. J.A. 1251. This figure includes (1) $588,243 of employees' withheld wages that had been retained by Appellants rather than paid to the IRS, (2) $239,038 in Appellants' employer share of employment taxes that had not been paid, (3) $3,990 in unemployment taxes that had not been paid, (4) $909,311 in interest on

8

unpaid employment taxes pursuant to U.S.S.G. § 2T1.1, (5) $600,767 in unpaid individual income taxes, and (6) $94,012 in unpaid corporate income taxes. *See* J.A. 1244–50. This corresponds to the $1.5 million to $3.5 million tax loss bracket for which a base offense level of 22 applies under U.S.S.G. § 2T4.1.

At sentencing, the government must introduce evidence supporting the tax loss amount "only [by] a preponderance of the evidence." *United States v. Miller*, 316 F.3d 495, 503 (4th Cir. 2003) (internal quotation omitted). Appellants concede that the two categories of unpaid employment taxes (items (1) and (2) in the list above) were properly included in the loss amount. Opening Br. at 38. However, they argue that the guidelines to not permit inclusion of interest and penalties (item (4)) and that there was insufficient evidence to support the amount of unpaid individual and corporate income taxes (items (5) and (6)).

Because sentencing errors are subject to harmless error review, we need not review every aspect of the loss calculation. Instead, if a supportable loss amount results in the same base offense level, the "resulting sentence was not longer than that to which [the defendant] would otherwise be subject," and any error, if in fact one was committed, is harmless. *Hargrove*, 701 F.3d at 161 (internal quotations omitted) (brackets in original).

The unpaid employment taxes (which Appellants concede are appropriately included in the loss figure) combined with the interest and penalties total a loss amount of $1,736,592. J.A. 1317. This loss amount falls within the same loss bracket as the loss amount that the district court calculated. *See* U.S.S.G. § 2T4.1 (setting forth a base offense level of 22 for the $1.5 million to $3.5 million tax loss bracket). Therefore, if the Sentencing Guidelines

9

permit interest and penalties to be included in the loss amount, any errors with respect to other losses that the district court included in the calculations are harmless.

All of the counts on which Appellants were convicted are grouped for guideline calculation purposes, because they are "closely related" within the meaning of the Guidelines. *See* U.S.S.G. § 3D1.2(d) (setting forth that counts are closely related "[w]hen the offense level is determined largely on the basis of the total amount of harm or loss"); J.A. 1251. To determine the applicable guideline for grouped counts, U.S.S.G. § 3D1.3(b) instructs courts to "apply the offense guideline that produces the highest offense level." Appellants contend that § 2T1.6 applies to these grouped counts and the government contends that § 2T1.1 applies. The district court applied § 2T1.1. To determine which is correct, we must determine which "produces the highest offense level." U.S.S.G. § 3D1.3(b).

U.S.S.G. § 2T1.1(a) instructs that the base offense level corresponds to the "tax loss," which § 2T1.1(c) defines as "the total amount of loss that was the object of the offense." Pursuant to Application Note 1, tax loss "does not include interest or penalties, *except in willful evasion of payment cases under 26 U.S.C. § 7201*." U.S.S.G. § 2T1.1 n.1. Appellants were convicted of willful evasion of payment under 26 U.S.C. § 7201, so, as specified in the application note, interest and penalties can be included in the tax loss if § 2T1.1 applies to these grouped counts. When including interest and penalties, the tax loss is $1,736,592, which corresponds to a base offense level of 22. U.S.S.G. § 2T4.1.

U.S.S.G. § 2T1.6(a) provides that the base offense level corresponds to "the tax not collected or accounted for and paid over." Because this would not include interests and penalties, the loss amount would be $827,281, which corresponds to a base offense level

10

of 20. *See* U.S.S.G. § 2T4.1. Appellants argue that the cross reference in § 2T1.6(b) applies. *See* Opening Br. at 34–36. That cross reference directs courts to apply § 2B1.1 if "the offense involved embezzlement by withholding tax from an employee's earnings and willfully failing to account *to the employee* for it." U.S.S.G. § 2T1.6(b)(1). That is not the case here. The W-2s that Appellants issued to their employees properly accounted for the withholding of employment taxes. J.A. 376–78. Accordingly, the cross reference does not apply, and the base offense level under § 2T1.6 is 20.

Because the guidelines mandate that district courts apply the "offense guideline that produces the highest offense level," § 2T1.1, which produced a base offense level of 22 (2 levels higher than the base offense level produced by § 2T1.6), is the applicable guideline. *See* U.S.S.G. § 3D1.3(b). The district court's calculations likewise produced a base offense level of 22. We need not reach the question of whether the district court's determination of loss attributable to unpaid individual and corporate income taxes was clearly erroneous, because even if it was, any such error was harmless. We thus affirm Appellants' sentences.

## IV.

For the foregoing reasons, we affirm without prejudice to a future § 2255 motion. We dispense with oral argument pursuant to Appellants' Joint Consent Motion to Submit the Appeal on the Briefs and because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid in the decisional process.

*AFFIRMED*

11